EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* WIGBERTO ACOSTA TORRES, acusado y apelante.

*Número:* CR-65-53 *Resuelto:* 8 de diciembre de 1965

María E. Medina de Acosta, Santos P. Amadeo y José Rafael Gelpí, abogados del apelante; J. B. Fernández Badillo, Procurador General, y J. F. Rodríguez Rivera, Procurador General Auxiliar, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Los hechos ocurren una tarde del año 1963 en un hogar en Hato Rey, Puerto Rico. El esposo ha salido. Queda en la casa la esposa y la hijita del matrimonio de ocho años de edad.

Como a las 3:30 Milagros Jiménez Medina gana acceso a la sala de la casa haciéndose pasar por una vendedora de efectos de cocina. La señora de la casa, Ana Rosario de Torres, le explica que no desea comprar nada y espera que la visitante se vaya. Por el contrario, ésta "haló una silla," declaró la señora, "se sentó, pidió un vaso de agua y yo mandé a la nena a buscar el vaso de agua a la cocina." Mientras tanto la señora Torres le dice a Milagros "Caramba, yo te conozco a tí." Milagros tenía puestas unas gafas ahumadas. Se quedó callada. La niña llega con el vaso de agua. La madre la reprende porque trae el vaso sin platillo o bandeja. Le dice que así no se sirve a las visitas. Luego de tomarse el agua, Milagros pide permiso para ir al baño. La señora Torres se sorprende un poco pero la deja pasar.

Sale Milagros del baño y se para al lado de la mesa del comedor. Se quitó las gafas. Entonces la señora Torres la reconoce y se lo dice: hace algunos años Milagros venía de vez en cuando a esa casa a tomar agua y comer dulces porque su escuela quedaba allí cerca. Milagros sólo contesta "Yo soy de Río Piedras." "No importa," le dice la señora Torres, "yo te conozco." Entonces Milagros camina ligero y asomándose por encima de la baranda se dirige a unos hombres que estaban allí agachados y les dice "Entren ustedes, que a mí me reconocieron." Entran dos hombres y detrás entran dos más. La señora Torres protesta de que entren a la casa sin permiso. Entonces uno la cogió por el cuello y comenzó la refriega.

La señora Torres trata de defenderse. Le dan y cae al piso. Mientras tanto otro agarra a la niña por el pelo, le da contra la pared y le dice "Si te mueves de ahí, matamos a tu madre y después veremos qué hacemos contigo." La niña queda allí, inmóvil, presa del terror, mientras ve que atacan a su madre, a quien pronto la sangre le cubre el rostro. Mientras

tanto otros del grupo van por los cuartos registrando las habitaciones y las gavetas de los muebles. A la señora Torres le estropean un ojo, le rompen la boca y, en un esfuerzo por silenciarla, le dan por la cabeza con un hierro. La cortan y sangra profusamente pero no queda inconsciente y sigue resistiendo. A los gritos de la señora Torres huyen los atacantes. Acuden los vecinos. A la señora la llevan al hospital. La niñita queda "como loca arriba gritando."

El apelante, Wigberto Acosta, era uno de los cuatro hombres que participaron en esa escena. Fue acusado de tentativa de robo y fue convicto por un jurado unánime. Fue sentenciado a cumplir de 3 a 9 años de presidio.

En apelación señala los siguientes cuatro errores:

1. "El Tribunal erró al permitir que pasara al jurado una confesión de la coacusada Milagros Jiménez Medina mediante un enjuiciamiento vicioso de Milagros Jiménez Medina, menor de edad, sobre la cual el Tribunal no tenía jurisdicción."

2. "El Tribunal erró al negarse a disolver el jurado una vez permitido que pasara una confesión de la coacusada que incriminaba al apelante."

3. "El Tribunal erró al sentenciar al acusado y apelante teniendo como base una acusación que no aduce hechos constitutivos de tentativa de robo."

4. "El Tribunal erró al denegar la solicitud del apelante de que el caso pasara a la consideración y estudio del oficial probatorio a los efectos de considerar una sentencia suspendida."

Si lo que se alega en el primer señalamiento fuese cierto y si el acusado hubiese solicitado, y se le hubiese negado, un juicio por separado, revocaríamos pues se le habría privado de su derecho constitucional de carearse con un testigo cuya declaración o confesión le era adversa. *Reyes* v. *Tribunal Superior*, 84 D.P.R. 29 (1961). Pero lo que ocurre es que lo alegado en el primer error no es cierto. No se presentó en evidencia una confesión de Milagros, ni el Tribunal permitió que pasara al jurado, ni Milagros declaró en momento alguno.

A este juicio concurrieron a declarar seis personas. Las primeras dos fueron la Sra. Ana Rosario de Torres y su hijita Ana Mercedes, quienes declararon lo que les aconteció a ellas en su propio hogar el día de los hechos. La tercera persona fue el Detective Luis Alejandro Ortiz, de cuya declaración nos ocuparemos en detalle más adelante y quien no llevó al jurado confesión alguna de Milagros. La cuarta persona fue José Jiménez, el padre de Milagros, y quien declaró sobre la edad de ella. La quinta persona fue el Juez Hon. Ricardo Calderón, quien oyó a los testigos a los fines de determinar causa probable. La sexta y última persona fue Julia Pérez, quien fue detenida con motivo de los sucesos, llevada al magistrado investigador y puesta en libertad por no existir causa contra ella. Su declaración no tiene nada que ver con la inocencia o culpabilidad del apelante. La coacusada Milagros Jiménez no declaró ni verbalmente ni por escrito en el juicio.

¿De dónde surge pues, el argumento de la confesión de Milagros y del perjuicio alegadamente sufrido por el acusado? Surge de que Milagros le había dicho al Detective Alejandro que ella, el apelante y tres individuos más participaron en los hechos. ¿Fue esta admisión de Milagros al jurado? No fue. Veamos a continuación cómo se desenvolvieron los hechos en este respecto.

Luego de declarar los primeros dos testigos—la Sra. Torres y su hija—el fiscal llama a declarar al Detective Alejandro. A las preguntas usuales comienza su declaración diciendo su nombre, que es detective, que lo era para la fecha de los hechos, que sabe quién es Milagros Jiménez Medina, que sabe quién es Wigberto Acosta Torres, y que el día de los hechos tuvo que ver con esas dos personas. Le preguntan que dónde y contesta que en el Cuartel General de la Policía. Inmediatamente luego de contestar esto último el fiscal se dirige al Tribunal y le dice: "En estos instantes, Vuestro Honor, vamos a pedir que se retire el jurado." El Juez accede y ordena al

alguacil a retirar al jurado y el jurado sale de la sala. (T.E. págs. 153–154.)

Estando el jurado ausente, y manifestándolo así el Juez (T.E. pág. 159) es que el detective informa que Milagros le dijo a él que Wigberto, Cheché, José Luis y otro cuyo nombre no recordaba y ella participaron en los hechos. Al terminar el detective de informar, el Lcdo. Ortiz del Rivero, uno de los abogados de la defensa, planteó que esas manifestaciones eran inadmisibles en cuanto al aquí apelante y el Juez estuvo de acuerdo con él. Luego, el otro abogado defensor interrogó al detective y finalmente pidió que el detective fuese retirado para hacer unos planteamientos. El detective se retira de la sala. Los abogados y el Juez tienen una conversación sobre la naturaleza de lo que ha declarado el detective. Siendo las cinco menos cuarto de la tarde, uno de los abogados defensores pide que se suspenda la vista hasta el próximo día. Todos asienten y la vista se suspende.

Continúa la vista el 20 de marzo de 1964. Vuelve a solicitarse, esta vez por la defensa, que se retire al jurado y así se hace. (T.E. pág. 174.) Luego de discutirse el incidente de la edad de Milagros, al cual nos referiremos más adelante, el Juez le pregunta al Fiscal si va a presentar al Detective Alejandro ante el jurado y el Fiscal contesta que no. Es entonces que el Juez ordena que se traiga el jurado a la sala.

Regresemos ahora al incidente sobre la edad de Milagros. Luego de declarar la Sra. Torres y su hijita—ante el jurado— y luego de ser examinado—en ausencia del jurado—el Detective Alejandro, el abogado Ortiz del Rivero le informó al Juez que habían descubierto "a última hora" que a la fecha de los hechos Milagros tenía 16 años y que por lo tanto el Tribunal no tenía jurisdicción sobre ella. Así se comprobó y el Tribunal se declaró sin jurisdicción sobre Milagros. Ésta dejó de ser acusada o coacusada en el procedimiento. En ningún momento Milagros declaró, ni suscribió confesión o admisión alguna que fuese al jurado.

Milagros había sido enjuiciada porque ella había informado que tenía 19 años y así lo informó al Tribunal en el acto de la lectura de la acusación. Como se sabe, la ley en Puerto Rico es al efecto de que una persona menor de 18 años no puede ser acusada de delito, a menos que tratándose de un menor que esté comprendido entre las edades de 16 y 18 años, el Tribunal Tutelar de Menores renuncie su jurisdicción, a los fines de que se le procese como adulto. Las "faltas" cometidas por los menores de 18 años, como la de Milagros en este caso, son de la jurisdicción del Tribunal Tutelar de Menores. 34 L.P.R.A. secs. 2001 y ss.

Los dos primeros errores señalados no se cometieron. El apelante fue convicto por el jurado mediante la prueba aducida por las dos perjudicadas, siendo esta prueba directa, ocular, admisible, no controvertida, y creída por el jurado.

■ En el tercer error señalado se sostiene que la acusación no aduce hechos constitutivos de tentativa de robo. Carece de mérito este señalamiento. La acusación expresa que los acusados "ilegal, voluntaria, maliciosa y criminalmente, penetraron en la residencia de Ana Rosario de Torres y mediante la fuerza, la violencia, amenazas e intimidación, intentaron sustraer bienes de la propiedad de la referida Ana Rosario de Torres, de su inmediata presencia y contra la voluntad de ésta."

No hay nada de vago o incierto en esa acusación. Por el contrario puede decirse que describe adecuadamente el acto cometido y éste fue una tentativa de robo según está definido dicho delito por el Art. 238 del Código Penal, 33 L.P.R.A. sec. 851.

Dispone dicho Art. 238:

"Entiéndese por robo el acto de apoderarse criminalmente de bienes muebles pertenecientes a otro, ya sustrayéndolos de su persona, ya en su inmediata presencia y contra su voluntad, por medio de la violencia o de la intimidación."

. El acusado quedó bien informado mediante la acusación del delito que se le imputaba. No sólo la descripción del mismo es suficiente sino que además la propia acusación especifica que es por el delito de "Tentativa de Robo."

El apelante señala que la traducción al español del Art. 238 de nuestro Código Penal, del artículo correspondiente del Código Penal de California (Art. 211) no es exacta. Luego de examinar un planteamiento igual en *Pueblo* v. *Ríos Fernandini*, 92 D.P.R. 810 (1965) expresamos lo siguiente:

"El Art. 238 del Código Penal define el delito de robo como el acto de apoderarse criminalmente de bienes muebles *pertenecientes* a otro, ya sustrayéndolos de su persona, ya en su inmediata presencia y contra su voluntad, por medio de la violencia o de la intimidación. De acuerdo con la anterior definición de robo es incuestionable que la acusación contenía hechos suficientes para imputar como cuestión de derecho la comisión de un delito de robo. El apelante sostiene, sin embargo, que el Art. 238 del Código Penal es una traducción errónea de la definición del delito de robo según el mismo se define en la versión inglesa del referido Art. 238, que es idéntica a la definición de robo del Art. 211 de California cuando adoptamos dicho Código. El punto estriba en que en la versión inglesa del Art. 238 y en el Art. 211 de California se habla de bienes muebles *en la posesión de otro,* y en la versión española se dice 'bienes muebles pertenecientes a otro.'

"Posiblemente la versión española del Art. 238 no es la traducción literal más exacta del texto en inglés, pero fundamentalmente no existe diferencia de tal naturaleza que haga que la versión española impute delito distinto al de la versión inglesa o no impute delito. El término 'perteneciente a otro' usado en el texto español incluye en su sentido general la posesión en otra persona. Lo importante es que los bienes no sean del propio acusado."

En el cuarto señalamiento se sostiene que el tribunal erró al denegar la solicitud del apelante para que el caso pasase al oficial probatorio con miras a obtener la suspensión de la sentencia. Cree el apelante que tiene derecho a ello. No es así. La propia ley que crea y establece la institución

de la sentencia suspendida en Puerto Rico dispone que el Tribunal "podrá" suspender los efectos de la sentencia en determinados casos. 34 L.P.R.A. sec. 1027. Es evidente que lo que hace la ley es darle discreción al Tribunal sentenciador para hacer algo que antes no podía hacer: suspender los efectos de la sentencia. No hay un derecho a ello. Su concesión cae dentro de la discreción del Tribunal sentenciador. *Pueblo* v. *Rivera*, 79 D.P.R. 880, 881 (1957); *Fernández* v. *Rivera*, 70 D.P.R. 900, 905 (1950); *Pueblo* v. *Emmanuelli*, 67 D.P.R. 667, 675 (1947); *Pueblo* v. *Feliciano*, 67 D.P.R. 247, 250 (1947). En *Pueblo* v. *Sánchez González*, 90 D.P.R. 197 (1964), no hemos dicho lo contrario. Lo que allí dijimos es que la discreción del tribunal sentenciador no es absoluta y siendo aquel un caso meritorio ordenamos que el mismo fuese referido al oficial probatorio. Las circunstancias de aquel caso y éste son muy diferentes.

Las circunstancias del caso de autos no justifican que intervengamos con el ejercicio de discreción del tribunal de instancia. La resolución apelada tiene a su favor la presunción de ser justa y correcta, *Pueblo* v. *Feliciano*, supra. Dadas las circunstancias de este caso así lo creemos. No se cometió el cuarto error señalado.

*Se confirmará la sentencia apelada.*