EL PUEBLO DE PUERTO RICO, demandante y recurrido, *v.* BLANCA I. MOLINA VIROLA Y OTRAS, acusadas y peticionarias.

*Número:* CE-93-84 *Resuelto:* 22 de octubre de 1996

714

*Martín González Vázquez*, abogado de las peticionarias; *Reina Colón de Rodríguez, Subprocuradora General Interina*, y *Grisel Hernández Esteves, Procuradora General Auxiliar*, abogadas de El Pueblo.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal Supremo.

Una vez más nuestro sistema de impartir justicia se confronta con la posibilidad de que la aplicación literal e inflexible de una disposición penal a unos hechos en específico pueda producir una grave injusticia, minando y socavando así la fe del Pueblo en el sistema.

Nos toca, pues, aclarar un error en la codificación que aparecía en Leyes de Puerto Rico Anotadas (L.P.R.A.) relativa al beneficio de sentencia suspendida por infracción a la Ley de Armas de Puerto Rico, Ley Núm. 17 de 19 de enero de 1951, según enmendada, 25 L.P.R.A. sec. 411 *et seq.* (en adelante Ley de Armas). Además, debemos determinar cuál ha de ser la aplicación correcta del Art. 2 de la Ley de Sentencia Suspendida y Libertad a Prueba, Ley Núm. 259 de 3 de abril de 1946, según enmendada, 34 L.P.R.A. sec. 1027 (en adelante la Ley o la Ley de Sentencia Suspendida), cuando coexisten sentencias por varios delitos, algunos de los cuales están excluidos de los beneficios de la ley.

# I

*Breve exposición de hechos*

Las peticionarias Blanca Iris, Marta y Lydia Molina Virola fueron acusadas por tentativa de asesinato,[1] y dos (2) infracciones a la Ley de Armas: Art. 6 (25 L.P.R.A. sec. 416), posesión de revólver o arma de fuego sin licencia, y Art. 8 (25 L.P.R.A. sec. 418), portación sin licencia de armas cargadas o sus municiones a la vez. Estos delitos, conforme al pliego acusatorio, fueron cometidos al haber actuado todas en concierto y común acuerdo con dos (2) sujetos que nunca fueron identificados. Los dos (2) desconocidos fueron quienes dispararon las dos (2) armas de fuego contra los perjudicados. Blanca Iris también fue acusada de un (1) cargo por amenaza[2] y tres (3) por alteración a la paz.[3] Además, a su hermana Lydia se le imputó un cargo por daños a la propiedad ajena.[4]

Las acusadas renunciaron a su derecho a juicio por jurado. Luego de concluido el desfile de prueba, fueron encontradas culpables de todos los cargos imputados. Inconformes, las tres (3) hermanas presentaron un escrito de apelación y el foro de instancia, previo al pago de fianza, ordenó su libertad condicional mientras durase el proceso apelativo.

Mediante Sentencia de 21 de enero de 1993, el Tribunal de Apelaciones, Sección Sur, confirmó todas las sentencias, excepto aquella dictada contra Blanca Iris Molina Virola por el delito de amenaza por cuanto el fiscal no pasó prueba alguna sobre la comisión de este delito. En reconsideración, el Tribunal de Apelaciones sostuvo su decisión de no intervenir con la apreciación de la prueba que hizo el tribunal de instancia.

---

[1] Art. 26 del Código Penal de 1974 (33 L.P.R.A. sec. 3121).

[2] Art. 153 del Código Penal de 1974 (33 L.P.R.A. sec. 4194).

[3] Art. 260 del Código Penal de 1974 (33 L.P.R.A. sec. 4521).

[4] Art. 179 del Código Penal de 1974 (33 L.P.R.A. sec. 4285).

Las tres (3) hermanas presentaron una petición de *certiorari*. Nos solicitaron la revocación del fallo condenatorio o que ordenásemos la celebración de un nuevo juicio. El 25 de marzo de 1993 denegamos el recurso. Las peticionarias solicitaron reconsideración. Plantearon que ellas hubiesen cualificado para cumplir su pena en probatoria. No obstante, el juez de instancia ordenó su ingreso a la cárcel por entender que está "prohibido por ley conceder el régimen de sentencia suspendida en las sentencias impuestas en los casos de violación a la Ley de Armas". Apéndice, pág. 76.

El 7 de mayo de 1993 emitimos una orden dirigida al Procurador General para que mostrara causa por la cual no debíamos expedir el recurso y dictar sentencia que confirmara la emitida por el foro de instancia, pero que devolviera el caso a dicho foro para que se determine si las tres (3) acusadas cualifican para el beneficio de la sentencia suspendida con respecto a los delitos por los que resultaron convictas. El Procurador General ha comparecido. Resolvemos según lo intimado.

## II

### La Ley de Sentencia Suspendida

■ La Ley de Sentencia Suspendida provee una medida alterna a la pena de cárcel. Los términos "sentencia suspendida" y "libertad a prueba" se utilizan indistintamente. Este beneficio también es conocido como probatoria, término este que tiene su raíz en la palabra inglesa *probation*.[5] A su vez, éste se deriva del latín *probatio* que significa "prueba". Se dice que este término

... fue acuñado en 1841 por John Augustus, un zapatero de Boston quien tomó a cargo un convicto con problemas de alcoho-

---

[5] No debe confundirse la libertad a prueba o probatoria con la libertad bajo palabra (*parole*).

lismo por entender que existían posibilidades de rehabilitación para ayudarlo a cambio de la ejecución de la sentencia. Con base en esta experiencia expandió el ámbito de ejecución de la medida en número y clase al abrir las facilidades de mujeres y jóvenes. O.E. Resumil de Sanfilippo, *Criminología General*, 2da ed., Río Piedras, Ed. U.P.R., 1992, pág. 187.

■ Mediante la concesión del beneficio de la libertad a prueba, el tribunal suspende la ejecución de la sentencia y permite al convicto de delito quedar en libertad durante todo o parte del término de la pena, sujeto a que éste observe buena conducta y cumpla con todas aquellas restricciones que el tribunal le imponga.[6] El cumplimiento cabal de las condiciones será supervisado por los óficiales probatorios.

De incumplirse una de éstas, el período cumplido en libertad no se abonará al tiempo que habrá de pasar en reclusión una vez revocada la concesión de la medida y comenzará el término fijado para la pena institucional.

Esta medida se fundamenta en un sistema de dúplice finalidad. De un lado, investigar al autor de conducta punible con anterioridad a la selección de la modalidad de ejecución de la sentencia, de manera que el tribunal posea una información detallada sobre el historial personal del convicto y la etiología del delito; y del otro, conceder un tratamiento individualizado en libertad. Resumil de Sanfilippo, *op. cit.*, pág. 188.

■ El propósito del mecanismo de la sentencia suspendida es lograr que un convicto de delito viva una vida productiva en la sociedad, alejado del trasiego delictivo, bajo un sistema de supervisión. Este mecanismo, además, representa una economía sustancial para el Estado y contribuye a resolver el serio problema de hacinamiento carcelario que padecemos. La Ley de Sentencia Suspendida es una ley de naturaleza remedial con un propósito

---

[6] En *Pueblo v. Vega Vélez*, 125 D.P.R. 188 (1990), resolvimos que el tribunal de instancia podrá imponer hasta un (1) año de reclusión como condición para obtener los beneficios de una sentencia suspendida en aquellos casos en que así lo entienda procedente y necesario.

rehabilitador. *Pueblo v. Vega Vélez*, 125 D.P.R. 188, 202 (1990).

El disfrute de una sentencia suspendida es un privilegio y no un derecho. *Pueblo v. Torres Rivera*, 137 D.P.R. 630 (1994); *Pueblo v. Rivera*, 79 D.P.R. 880, 881 (1957). Reiteradamente hemos expresado que la concesión de este privilegio cae dentro de la discreción del juez sentenciador.[7] *Pueblo v. Torres Rivera*, supra; *Pueblo v. Acosta Torres*, 92 D.P.R. 887, 894 (1965), y casos allí citados.

Examinados los principios generales sobre la Ley de Sentencia Suspendida, pasemos a considerar su interrelación con la Ley de Armas.

## III

*Codificación errónea en la sec. 1027 del Título 34 de Leyes de Puerto Rico Anotadas del Art. 6 de la Ley de Armas*[8]

### A. *Problema causado por la codificación errónea*

La Ley Núm. 8 de 30 de noviembre de 1989 enmendó el Art. 2 de la Ley de Sentencia Suspendida, *supra*. Al incor-

---

[7] La concesión del beneficio de sentencia suspendida recae en la discreción del juzgador. Aunque dicha discreción es amplia, ésta no puede estar sujeta a arbitrariedad. *Pueblo v. Ortega Santiago*, 125 D.P.R. 203 (1990); *Pueblo v. López Rosario*, 126 D.P.R. 845 (1990). Sin embargo, una vez concedida una probatoria, el convicto adquiere un derecho a su libertad que está limitado por las condiciones fijadas para gozar del mismo. *Martínez Torres v. Amaro Pérez*, 116 D.P.R. 717, (1985); *Maldonado Elías v. González Rivera*, 118 D.P.R. 260, 276 (1987).

Debido a que la libertad condicionada constituye un "derecho limitado", el confinado tiene derecho a ser oído antes de que dicho derecho le sea revocado. *Torres Rosario v. Alcaide*, 133 D.P.R. 707 (1993); *Martínez Torres v. Amaro Pérez*, supra; *Maldonado Elías v. González Rivera*, supra. A tenor con la norma establecida jurisprudencialmente, se enmendó el Art. 4 de la Ley de Sentencia Suspendida, 34 L.P.R.A. sec. 1029, para establecer un mecanismo de revocación de la libertad a prueba que cumpliera con los requerimientos del debido procedimiento de ley. Ley Núm. 31 de 29 de mayo de 1986 (34 L.P.R.A. sec. 1027a).

[8] A la fecha en que se suscribe esta opinión, la codificación del Art. 2 de la Ley de Sentencia Suspendida en la sec. 1027 del Título 34 L.P.R.A. ha sido corregida. No obstante, entendemos prudente consignar la siguiente explicación para atender situaciones que erróneamente se hayan atendido al tenor de la codificación anterior.

porarse dicha enmienda, el texto del Art. 2 en Leyes de Puerto Rico, en lo pertinente, establecía lo siguiente:

El Tribunal Superior podrá suspender los efectos de la sentencia que se hubiera dictado en todo caso de delito grave que no fuere asesinato, robo, incesto, extorsión, violación, crimen contra natura, actos lascivos o impúdicos cuando la víctima fuere un menor de 14 años, secuestro, escalamiento, incendio malicioso, sabotaje de servicios públicos esenciales, *infracción a los Artículos 5, 6A en su modalidad de delito grave,* 8 y 10 de la "Ley de Armas de Puerto Rico" .... (Énfasis suplido.) 1989 Leyes de Puerto Rico 617–618.

El Art. 6A de la Ley de Armas, 25 L.P.R.A. sec. 416a, en su modalidad grave, castiga a toda persona que ilegalmente tenga, posea, guarde, almacene, alquile o mantenga bajo su custodia o control dos o más armas de fuego, o que ilegalmente facilite un arma de fuego a otra persona, especialmente si el arma se usa en la comisión de un delito. El citado Art. 6A también contiene una modalidad menos grave para aquellos poseedores de armas de fuego con licencia expirada o cancelada que hayan solicitado su renovación dentro del término provisto por ley.

El texto del Art. 2 de la Ley de Sentencia Suspendida aparecía citado en el Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 1027 (ed. 1991), de la forma siguiente:

El Tribunal Superior podrá suspender los efectos de la sentencia que se hubiera dictado en todo caso de delito grave que no fuere asesinato, robo, incesto, extorsión, violación, crimen contra natura, actos lascivos o impúdicos cuando la víctima fuere menor de 14 años, secuestro, escalamiento, incendio malicioso, sabotaje de servicios públicos esenciales, *infracción a las secs. 415 y 416 del Título 25 en su modalidad de delito grave,* 418 y 420 del propio título .... (Énfasis suplido.)

Debido a que el texto original de la enmienda al Art. 2 de la Ley de Sentencia Suspendida, *supra,* hace referencia al Art. 6A de la Ley de Armas, 25 L.P.R.A. sec. 416a, y no al Art. 6 de la referida ley, 25 L.P.R.A. sec. 416, la cita en 34 L.P.R.A. sec. 1027, que hacía referencia al Art. 6, era erró-

nea y no correspondía a la ley según ésta fue aprobada, que es la ley oficial vigente. Este error fue corregido en el Suplemento Acumulativo del Título 34 de L.P.R.A. para 1994, donde se hace mención a la sec. 416a y no menciona la sec. 416.[9]

B. *Explicación para el error en la codificación*

En las anotaciones de la casa editorial Equity sobre el historial del Art. 2 de la Ley de Sentencia Suspendida, 34 L.P.R.A. sec. 1027 n., se publica la explicación siguiente:

> *Codificación.*
> En el primer párrafo, según enmendado por la Ley de Noviembre 30, 1989, Núm. 8, p. 616, se menciona el art. 6A de la "Ley de Armas de Puerto Rico". *Considerando que dicho artículo no existe, se ha codificado dicha cita como "sec. 416 del Título 25".* (Énfasis suplido.)

Debido a que el Art. 6 de la Ley de Armas, *supra*, era el único existente en 1989, los codificadores cometieron el error de adjudicar perfecta identidad entre éste y el citado Art. 6A. El Art. 6A fue añadido a la Ley de Armas en 1991.

---

[9] Anteriormente se había cometido otro error en relación con la codificación en la sec. 1027 del Título 34 de L.P.R.A. En el Suplemento Acumulativo correspondiente a 1990, la parte pertinente de dicha sección disponía como sigue:

"El Tribunal Superior podrá suspender los efectos de la sentencia que se hubiera dictado en todo caso de delito grave que no fuere asesinato, robo, incesto, extorsión, violación, crimen contra natura, actos lascivos o impúdicos cuando la víctima fuere menor de 14 años, secuestro, escalamiento, incendio malicioso, sabotaje de servicios públicos esenciales, infracción a las secs. *417 y 418a del Título 25 en su modalidad de delito grave*, 426 y 428 del Título 25, o cualquier violación a la Ley de Explosivos de Puerto Rico ...". (Énfasis suplido.)

Conforme a esta redacción, el Art. 8A de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 418a, aparentaba estar también excluido de los beneficios de sentencia suspendida. En esa ocasión se hacía referencia a la Ley Núm. 8 de 30 de noviembre de 1989 como fuente de la disposición codificada. Sin embargo, como vimos, dicha ley hace referencia en su texto al Art. 8 de la Ley de Armas de Puerto Rico, *supra*, no al Art. 8A. La codificación en L.P.R.A., por lo tanto, fue errónea.

En *Pueblo v. Texidor Seda*, 128 D.P.R. 578 (1991), citamos la sec. 1027 del Título 34 de L.P.R.A. que aparecía en el Suplemento Acumulativo de 1990. Este error, sin embargo, no produce consecuencia alguna en relación al resultado a que allí llegamos. El caso trataba de la Ley de Sentencia Suspendida en relación con el Art. 404 de la Ley de Sustancias Controladas de la referida ley, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 L.P.R.A. sec. 2404, y no en cuanto a su aplicación a la Ley de Armas de Puerto Rico.

Ahora bien, para poder entender lo ocurrido e interpretar correctamente la intención legislativa es necesario que tracemos el historial legislativo de la citada Ley Núm. 8. Ésta tuvo su origen en un anteproyecto de administración, el número de Fortaleza F 221, el cual fue presentado en ambos cuerpos de la Asamblea Legislativa, Senado y Cámara de Representantes, en abril de 1989 durante la Primera Sesión Ordinaria de la Undécima Asamblea Legislativa. Como proyectos gemelos en ambos cuerpos se designaron con los números P. del S. 468 y P. de la C. 622.

Durante la misma Primera Sesión Ordinaria también se sometió otro anteproyecto de administración que correspondía a los proyectos gemelos P. del S. 453 y P. de la C. 621. Eran estos proyectos los que añadían el Art. 6A a la Ley de Armas, *supra*, a fin de castigar la posesión ilegal de dos (2) o más armas de fuego. La creación del Art. 6A era necesaria antes de poder excluir esta conducta de los beneficios de la Ley de Sentencia Suspendida. El P. del S. 468 fue aprobado por el Senado el 23 de junio de 1989 y por la Cámara de Representantes el 25 de octubre de 1989. El P. del S. 468 se convirtió en la Ley Núm. 8 de 30 de noviembre de 1989. El P. del S. 453, sin embargo, aunque fue aprobado por el Senado, la Cámara lo aprobó con enmiendas. Por esta razón la medida para crear el mencionado Art. 6A tuvo que ir a Conferencia, lo cual retrasó su eventual aprobación por casi dos (2) años. Finalmente se convirtió en la Ley Núm. 35 de 30 de julio de 1991.

Fue durante este lapso de tiempo, entre la aprobación de la Ley Núm. 8 en 1989 y la Ley Núm. 35 en 1991, que se preparó la codificación de Equity bajo la supervisión de la Comisión Codificadora del Departamento de Justicia y se envió a la imprenta el Título 34 de L.P.R.A. Debido a que para la fecha de la codificación no existía el citado Art. 6A, los codificadores, en vez de aclarar que no existía un artículo 6A, ya que el proyecto de ley que incluía un artículo con esa numeración no había sido añadido a la Ley de Ar

mas, incorrectamente lo identificaron como el Art. 6 en 34 L.P.R.A. sec. 1027. Siendo los textos de los Arts. 6 y 6A diferentes, la codificación errónea que aparecía en 34 L.P.R.A. sec. 1027 excluyó incorrectamente del beneficio de la probatoria a los infractores del citado Art. 6 (posesión ilegal de pistola), 25 L.P.R.A. sec. 416; y una vez aprobado el Art. 6A, concedió, también incorrectamente, este beneficio a los violadores del Art. 6A (posesión ilegal de dos (2) o más armas).

■ En resumen, una interpretación correcta del Art. 2 de la Ley de Sentencia Suspendida, *supra*, refleja que los convictos por infracción al Art. 6 de la Ley de Armas, *supra*, por poseer una pistola o revólver sin tener licencia para ello cualifican para el beneficio de sentencia suspendida siempre y cuando cumplan con los requisitos de ley. Por ello, y sólo si el tribunal de instancia determina que las peticionarias cualifican, se les podrá conceder el privilegio de la sentencia suspendida con respecto a la convicción por las dos (2) infracciones al Art. 6.

## IV

*Aplicación de la Ley de Sentencia Suspendida cuando coexisten convicciones por delitos que cualifican para el beneficio de la sentencia suspendida y delitos excluidos de este beneficio*

Las peticionarias nos plantean como error que se les negara el beneficio de la sentencia suspendida para el delito de tentativa de asesinato para el cual, alegan, hubiesen cualificado.[10] Sobre este particular expresan

[10] La Ley Núm. 33 de 27 de julio de 1993 enmendó el Art. 2 de la Ley de Sentencia Suspendida, *supra*, a los fines de excluir de los beneficios de sentencia suspendida y libertad bajo palabra a toda persona que utilice o intente utilizar un arma de fuego en la comisión de un delito grave o su tentativa. Al momento de la convicción de las apelantes, dicha enmienda aún no había sido aprobada.

> [q]ue las recurrentes tienen que cumplir seis años de reclusión [por el delito de tentativa de asesinato] únicamente porque el delito de art. 8 no tiene probatoria por el cual fueron condenadas a cumplir solo 3 años.
>
> O sea, que tienen que cumplir más cárcel (6 años) que la impuesta por el delito que no tiene probatoria (3). Esto también es injusto y constituye un castigo cruel. (Énfasis suprimido.) Moción al amparo de la Regla 29, pág. 2.

En vista de la confusión que refleja la determinación del tribunal de instancia, es necesario que aclaremos cómo debe aplicarse esta Ley.

▪ Siempre que hemos analizado e interpretado los contornos de la Ley de Sentencia Suspendida hemos tenido presente que la misma tiene un propósito rehabilitador. En este sentido hemos resaltado que esta ley "tiene el propósito, entre otros, de hacer viable la implantación de la política pública enunciada en la Sec. 19 del Art. VI de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, ed. 1982, pág. 379, a los efectos de 'propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social' ". (Énfasis suprimido.) *Pueblo v. Vega Vélez*, supra, pág. 200. En este caso resaltamos también que la Ley de Sentencia Suspendida incorpora la discreción como

> ... parte o eje vital del esquema teórico de la misma. La razón es sencilla: para lograr los objetivos de este sistema resulta indispensable que los jueces de instancia tengan una gran flexibilidad, o discreción, en la administración de la misma. El logro del objetivo de la rehabilitación del convicto que persigue este sistema depende en gran medida de la facultad del juez de poder individualizar cada caso .... (Énfasis suprimido.) *Pueblo v. Vega Vélez*, supra, pág. 201.

Es dentro de este marco conceptual que debemos analizar la controversia que se nos presenta. ¿Tiene el tribunal sentenciador facultad para conceder los beneficios de sentencia suspendida en cuanto a los términos de reclusión impuestos por delitos cobijados por la Ley, aun cuando por

los mismos hechos la persona haya sido convicta simultáneamente por delitos excluidos de los beneficios, siempre que los términos de reclusión efectivamente impuestos por los delitos cobijados sean mayores que los términos impuestos por los delitos excluidos y los mismos deban cumplirse concurrentemente? Esta es la situación en el caso de autos. A las peticionarias se les impuso un término de reclusión de seis (6) años por el delito de tentativa de asesinato y tres (3) años por cada violación a los Arts. 6 y 8 de la Ley de Armas, *supra*, concurrentes entre sí. De estos delitos, el único que la Ley excluye del beneficio de sentencia suspendida es el delito tipificado en el citado Art. 8.[11]

 La Ley de Sentencia Suspendida no atiende directamente esta controversia ni le concede expresamente esta facultad al juez sentenciador, aunque tampoco lo prohíbe. Sin embargo, la Ley sí indica que, siempre que concurran los requisitos enumerados, el "Tribunal Superior podrá suspender los efectos de la sentencia que se hubiere dictado en todo caso de delito grave que no fuere" uno de los expresamente excluidos, "en todo caso de delito menos grave que surja de los mismos hechos o de la misma transacción que hubiere dado lugar, además, a sentencia por delito grave que no fuere de los excluidos" y en "los casos de delitos menos grave que no surjan de los mismos hechos o de la misma transacción que dio lugar a un delito grave", cuando se le haya impuesto pena de reclusión. Art. 2 de la Ley de Sentencia Suspendida, según enmendado, *supra*. En estos casos el juez tiene discreción para suspender los efectos de la sentencia. El legislador no limitó expresamente esta discreción por haberse emitido convicciones simultáneas por varios delitos. En relación con la discreción que le concede la Ley al juez sentenciador, hemos dicho que la misma "naturalmente, significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o

---

[11] Véase el esc. 10, sobre el estado de derecho vigente en la actualidad en relación con el delito de tentativa de asesinato.

varios *cursos de acción". Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 211 (1990). No existe en la Ley impedimento para que en situaciones mixtas, como las descritas al comienzo de esta parte de la opinión, el Tribunal tenga a su disposición el "curso de acción" de suspender los efectos de las sentencias en relación con los delitos cobijados por los beneficios de la Ley.

Este curso decisorio es cónsono, además, con nuestros previos pronunciamientos en torno a la aplicación de la Ley de Sentencia Suspendida. El mismo permite que el juez sentenciador pueda evaluar las características particulares de cada caso y, a su tenor, decidir si la suspensión de los efectos de la sentencia en relación con los delitos cobijados hace posible la rehabilitación de la persona. Permite, también, el grado de flexibilidad necesario para administrar efectivamente la Ley, al reconocer un curso de acción adicional para que el juez pueda ejercer su discreción. Consecuentemente, resolvemos que, en casos como el de marras,[12] tiene facultad el juez sentenciador de conceder la suspensión de los efectos de la sentencia en relación con los delitos cobijados por la Ley.[13]

---

[12] El mismo análisis sería aplicable cuando las sentencias deban cumplirse consecutivamente.

[13] Aunque la controversia que hoy resolvemos no se nos había planteado directamente con anterioridad, cabe señalar que este Tribunal ha atendido casos en los que los tribunales de instancia han concedido los beneficios de la Ley de Sentencia Suspendida de forma consistente con la que hoy avalamos. Así, por ejemplo, en *De Jesús v. Ramírez, Alcaide Cárcel*, 72 D.P.R. 297 (1951), el peticionario fue convicto por los delitos de mutilación y portación de armas. Por el primer delito el tribunal le impuso una pena de reclusión de cuatro (4) años; por el segundo delito el tribunal impuso una pena de reclusión de cuatro (4) meses. Así las cosas, el tribunal sentenciador concedió la probatoria en relación con el delito de mutilación, que cualificaba para dicho beneficio, mas no así en relación con otro delito por carecer de autoridad legal para ello. Las sentencias se impusieron de forma consecutiva, cumpliéndose primero la pena por el delito de mutilación. En esa ocasión dijimos:

"El tribunal de distrito se confrontó con un difícil problema en este caso. La teoría de la probatoria es que ésta deberá concederse en aquellos casos en que está justificado el evitar encarcelación alguna. Esta teoría no podía lograrse totalmente en el presente caso porque la corte inferior carecía de autoridad para suspender la sentencia de cuatro meses. Frente a este dilema, quizá hubiera sido más propio, desde el punto de vista de la rehabilitación, exigir que se cumpliera la sentencia de cuatro meses de cárcel, antes y no después de la sentencia probatoria. Pero la corte inferior tenía autoridad legal para disponer lo último según hizo en este caso." (Cita y escolio omitidos.) *De Jesús v. Ramírez, Alcaide Cárcel*, supra, págs. 300–301.

En estos casos el tribunal de instancia debe ordenar a la oficina de los Oficiales Probatorios que realice el informe presentencia para aquellos delitos que no estén excluidos por el Art. 2 de la Ley de Sentencia Suspendida, *supra*.([14]) Si el convicto cualifica, el juez no está impedido de conceder el privilegio de la sentencia suspendida con respecto a aquellos delitos que no estén excluidos, aun cuando el convicto tenga que cumplir cierto tiempo en reclusión por aquellos delitos excluidos del beneficio de la probatoria. El juez debe, entonces, hacer la determinación en cuanto a cada uno de los delitos que no estén excluidos en el Art. 2 de la Ley de Sentencia Suspendida, *supra*, y conceder la suspensión si el convicto cualifica. Cuando proceda su concesión, la suspensión será efectiva desde que deba comenzarse a cumplir la sentencia, aun cuando simultáneamente la persona esté recluida por los delitos excluidos de los beneficios, por haberse impuesto las penas de forma concurrente. En estos casos, una vez la persona cumpla en reclusión por los delitos excluidos, podrá seguir cumpliendo en libertad a prueba el remanente del período,

---

En el razonamiento está implícito el reconocimiento que la actuación del tribunal sentenciador, al conceder la suspensión en relación al delito que cualificaba, fue correcta.

De igual manera, en *Pueblo v. Martínez Vega*, 98 D.P.R. 946 (1970), tuvimos ante nuestra consideración un caso en el cual el apelante había sido convicto por el delito de homicidio involuntario (cobijado por la Ley de Sentencia Suspendida) y por infracción a la Ley de Armas. Por el primero fue sentenciado a cumplir tres (3) años de reclusión y, por el segundo, un (1) año. La sentencia de tres (3) años le fue suspendida; no así la de un (1) año. Avalamos ese proceder diciendo que

"[f]ue en virtud de esta disposición legal [la Ley de Sentencia Suspendida vigente al momento] que el tribunal sentenciador suspendió los efectos de la sentencia en el caso de homicidio involuntario, mas como correctamente resolvió el Hon. Juez Gil Rivera, no procedía, como cuestión de derecho, la suspensión de los efectos de la sentencia dictada en el caso por infracción a la Ley de Armas." *Pueblo v. Martínez Vega*, supra, pág. 956.

([14]) El Art. 59 del Código Penal, 33 L.P.R.A. sec. 3283, dispone:

"La imposición de la pena requerirá un informe pre-sentencia, el cual será mandatorio en los delitos graves y a discreción del tribunal en los delitos menos graves. Estos informes estarán a disposición de las partes.

"No se impondrá ninguna limitación a la naturaleza de la información concerniente al historial completo, carácter y conducta de la persona convicta que el tribunal pueda considerar a los efectos de imponer sentencia." Véase la Regla 162.1 y ss. de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

correspondiente a los delitos cobijados por los que se le concedió el beneficio, para los cuales el término de reclusión impuesto fue mayor que aquel que se impuso para los delitos excluidos. Cuando las penas se impongan consecutivamente y se conceda la suspensión de la sentencia por los delitos no excluidos, deberá cumplirse primero en reclusión la pena por los delitos excluidos y luego, en libertad bajo palabra, las demás sentencias.

En el presente caso, la defensa presentó una moción de circunstancias atenuantes y, con la anuencia del Ministerio Público, el juez la declaró con lugar.(15) Por ello rebajó la pena por la infracción a los citados Arts. 6 y 8 de la Ley de Armas a sólo tres (3) años y a seis (6) años la pena por la tentativa de asesinato, que en los tres (3) delitos es el mínimo permitido por ley.(16)

El foro de instancia ordenó, a solicitud de las convictas, que se refiriese su caso a la oficina de los Oficiales Probatorios para que rindiese el informe presentencia. El tribunal, sin embargo, no determinó si las peticionarias cualificaban para el privilegio de la sentencia suspendida con respecto al delito de tentativa de asesinato. Entendió que una vez convictas por un delito excluido del beneficio de la Ley de Sentencia Suspendida, el tribunal no tenía facultad para conceder el beneficio con respecto a los otros delitos

---

(15) La Regla 162.4 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, dispone que tanto el acusado como el Fiscal podrán solicitar del tribunal que escuche la prueba de circunstancias atenuantes o agravantes a los fines de la imposición de la pena. El tribunal celebrará una vista cuando exista controversia real sobre un hecho material que requiera la presentación de prueba. En dicha vista el Fiscal podrá presentar prueba de circunstancias agravantes que justifiquen una sentencia rigurosa o el que no se deban suspender los efectos de la sentencia, o en caso contrario, que se impongan condiciones estrictas. Por su parte, el acusado podrá presentar prueba de circunstancias atenuantes que a su juicio justifiquen que se dicte una sentencia benigna o que se suspendan sus efectos. Véase, también, la Regla 171 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

(16) La penalidad por la infracción al citado Art. 6 de la Ley de Armas, cuando median circunstancias atenuantes, es de tres (3) años. 25 L.P.R.A. sec. 448(c). Para la pena por infringir el Art. 8, véase 25 L.P.R.A. sec. 452. La pena del delito de tentativa de asesinato, con atenuantes, es de seis (6) años porque es la mitad de los doce (12) años que dispone la ley para el delito de asesinato. Art. 27 y 84 del Código Penal de 1974 (33 L.P.R.A. secs. 3122 y 4003).

que no están excluidos del beneficio de la probatoria. Así se desprende de la Orden de 11 de diciembre de 1990 emitida por el Tribunal Superior: "el Tribunal está impedido de conceder probatoria por la comisión del delito de [infracción] al Artículo 8 de la Ley de Armas de P.R." Apéndice, pág. 52. Esta actuación queda recogida también en la Exposición Narrativa de la Prueba.([17])

> Se ordenó el ingreso de las apelantes a la c[á]rcel por estar prohibido por Ley conceder el régimen de sentencia suspendida en las sentencias impuestas en los casos de violación a la Ley de Armas. Se ordenó que todas las penas se cumplieran de manera concurrente. Apéndice, pág. 76.

El tribunal sentenciador erró al así disponer.

◼ Las peticionarias presentaron prueba de circunstancias atenuantes que justificaron se dictara una sentencia benigna. Conforme con la Regla 162.4 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, dichas circunstancias también pueden ser utilizadas para suspender los efectos de la sentencia. Procede, pues, que se devuelva este caso al tribunal de instancia para que éste haga, conforme a su discreción, la determinación que corresponda en cuanto al beneficio de sentencia suspendida para el delito de tentativa de asesinato, así como para el resto de los delitos por los que resultaron convictas las peticionarias, que estén cobijados por la Ley de Sentencia Suspendida.

---

([17]) Véase el Acta de la vista celebrada el 20 de diciembre de 1990 en el Tribunal Superior, Sala de Ponce: "El Tribunal informa a las partes que 'las acusadas están confinadas por que [sic] el Artículo 8—Ley de Armas fue cometido tres (3) o cuatro (4) semanas [después] que la legislatura aprobó el no conceder la probatoria en cuanto a dicho artículo'."

Las peticionarias fueron convictas por delitos que no estaban excluidos de la Ley de Sentencia Suspendida, por lo que el tribunal debió determinar si cualificaban para la libertad a prueba por el delito de tentativa de asesinato. Una vez cumplida la pena de reclusión, por ejemplo, de tres (3) años por las infracciones a la Ley de Armas de Puerto Rico, por tratarse de penas concurrentes, las acusadas hubiesen terminado de extinguir los últimos tres (3) años de la pena de seis (6) años por la tentativa de asesinato bajo el régimen de libertad a prueba.

# V

*Conclusión*

Por los fundamentos aquí expresados, *se expedirá el auto solicitado y se dictará sentencia confirmando la sentencia condenatoria dictada contra las acusadas Blanca Iris Molina Virola, Lydia Molina Virola y Marta Molina Virola, según modificada por el anterior Tribunal de Apelaciones, Sección Sur, y se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Ponce, para que éste determine si las tres (3) acusadas cualifican para el beneficio de la sentencia suspendida a tenor con lo resuelto en esta opinión.*

El Juez Asociado Señor Rebollo López emitió una opinión concurrente y disidente. El Juez Asociado Señor Negrón García disintió con una opinión escrita.

— O —

Opinión concurrente y disidente emitida por el Juez Asociado Señor Rebollo López.

Aun cuando concurrimos con la mayoría del Tribunal en cuanto a la determinación de que los convictos por una infracción al Art. 6 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 416, cualifican, prima facie, para recibir los beneficios de una sentencia suspendida, *no* podemos avalar lo resuelto por este Tribunal respecto al procedimiento a seguir en situaciones en que un acusado es convicto por varios delitos, incluyendo algunos bajo los cuales cualifica para recibir los beneficios de una sentencia suspendida y otros en relación con los cuales no tiene derecho a la misma. Conforme inexplicablemente resuelve el Tribunal, en estas situaciones "mixtas" el foro de instancia debe *siempre* decidir si el convicto "cualifica", o no, para recibir

una sentencia suspendida, la cual, recordamos, está legalmente impedido de concederle.

Dicho con cariño y respeto, la decisión mayoritaria constituye uno de los ejercicios, en abstracto, más fútiles de que jamás hayamos tenido conocimiento. En adición a ello, el dinero y tiempo que se invertirá, por los funcionarios correspondientes, en hacer la investigación e informe sobre si el convicto "cualifica", o no, para recibir los beneficios de una probatoria —*que por ley no se le puede conceder*— constituye un malgasto extraordinario de fondos públicos.

Realmente *no* hay que extenderse mucho para demostrar lo erróneo de la decisión mayoritaria. Basta con decir que si una persona es convicta de un delito que el legislador ha excluido de los beneficios de sentencia suspendida, esa persona, *por mandato legislativo*, no cualifica para recibir dichos beneficios. Por otro lado, cabe preguntarse de qué le vale a un convicto de Asesinato en Primer Grado —*que mandatoriamente tiene que ser sentenciado a sufrir, y cumplir en prisión, la condena de cadena perpetua*— el saber que "cualifica", en abstracto, para una probatoria en relación, digamos, con el delito de tentativa de asesinato. Cosas extrañas veredes, dijo algún filósofo.

— O —

Opinión disidente del Juez Asociado Señor Negrón García.

En lo sustantivo, la solución mayoritaria nos recuerda el refrán pueblerino, "no se puede repicar campanas y dar Misa".

I

Disentimos de la interpretación forzada que se hace de la Ley de Sentencia Suspendida en casos en que recaen convicciones por varios delitos, algunos de los cuales cuali-

fican para ese beneficio. Las peticionarias, Blanca, Marta y Lydia Molina Virola fueron convictas de tentativa de asesinato y violación al Art. 6 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 416, y sentenciadas a seis (6) y tres (3) años, respectivamente. Además,([1]) sentenciadas a tres (3) años por infringir el Art. 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 418,([2]) *delito expresamente excluido de los beneficios de la Ley de Sentencia Suspendida.*([3]) El ilustrado tribunal sentenciador (Hon. Julio Alvarado Ginorio, Juez) dictaminó que no podía suspenderles las sentencias. Oportunamente, dispuso que *todas fueran cumplidas concurrentemente.*

Según la mayoría, ante esa situación, el tribunal de instancia deberá siempre determinar si suspende la sentencia en los delitos no excluidos en la ley o no. Es un error. *La Ley de Sentencia Suspendida no concede esa facultad en situaciones "mixtas", como la del caso de autos.* Compárese *Pueblo v. Vega Vélez*, 125 D.P.R. 188 (1990). Esa conclusión ignora la letra clara de la ley e introduce una nueva modalidad de sentencia suspendida bajo el frágil argumento de que dicha ley no lo prohíbe.

Los tribunales interpretamos, *no legislamos.* No estamos ante una frase oscura o dudosa, lapsus legislativo([4]) u omisión de palabras o letras en el texto jurídico.([5]) La mayoría asume hoy, sin reservas, funciones que pertenecen a

---

([1]) Blanca Iris también fue encontrada culpable de un (1) cargo por amenaza y tres (3) por alteración a la paz.

([2]) En lo pertinente, tipifica como delito grave toda persona que, sin licencia, "porte, conduzca o transporte cualquier pistola, revólver o *cualquier otra arma de fuego cargada ...".* 25 L.P.R.A. sec. 418.

([3]) Esa exclusión forma parte de una clara política pública legislativa, plasmada en la Ley Núm. 8 de 30 de noviembre de 1989. En lo pertinente, dispone:

*"Mediante esta enmienda se excluye de los beneficios de sentencia suspendida a los convictos por los delitos antes descritos así como a aquellos que violen las disposiciones de la Ley de Armas que prohíben* el empleo de cualquier instrumento o accesorio que silencie o reduzca el ruido del disparo de cualquier arma de fuego *y la portación de armas de fuego cargadas."* (Énfasis suplido.) Exposición de Motivos de la Ley Núm. 8 de 30 de noviembre de 1989, Leyes de Puerto Rico, pág. 617.

([4]) *Calaf v. Sec. Hacienda*, 76 D.P.R. 577, 583–584 (1954).

([5]) En lo pertinente se dispone:

la Asamblea Legislativa y, sin justificación alguna, *añade* una disposición enteramente nueva. Ello atenta contra la intención legislativa y menoscaba el principio rector de que la promulgación y el establecimiento de las penas es función *exclusiva* de la Legislatura. Sólo podemos imponer sentencias que estén dentro de esa *autoridad estatutaria*, a saber, reclusión carcelaria, multa, restitución y *la suspensión de los efectos de la sentencia en los casos que específicamente dispone la ley*. Ni el Código Penal ni la Ley de Sentencia Suspendida nos autorizan a sentenciar a una persona, convicta por varios delitos, a un período de encarcelamiento por uno de los delitos y, concurrentemente, a cumplir un período en libertad a prueba por otros. Aunque el destinatario de la protección del *principio de legalidad* es el acusado, la Sociedad también es acreedora a que al sentenciar los tribunales ejerzan esa facultad al amparo de la ley.(⁶)

Es peregrina la conclusión de que se trata de una omisión por inadvertencia del legislador, máxime ante un estatuto que ha merecido su constante atención y múltiples oportunidades para subsanarlo.(⁷)

La posición mayoritaria no sólo descarta la intención legislativa, sino que *desnaturaliza* el sistema de sentencia vigente en el país. *Toda sentencia se presume es un acto inteligente y racional del juez.* La imposición de diferentes tipos de penas a ser *cumplidas concurrentemente* presupone una discreción judicial armonizable entre sí. *Conse-*

---

"No se instará acción penal contra persona alguna por un hecho que no esté expresamente definido por la ley como delito, *ni se impondrán penas o medidas de seguridad que la ley no hubiere previamente establecido.*" (Énfasis suplido.) Art. 8 del Código Penal, 33 L.P.R.A. sec. 3031.

(⁶) En lo pertinente dispone:

"No se instará acción penal contra persona alguna por un hecho que no esté expresamente definido por la ley como delito, *ni se impondrán penas o medidas de seguridad que la ley no hubiere previamente establecido.*" (Énfasis suplido.) Art. 8 del Código Penal, 33 L.P.R.A. sec. 3031.

(⁷) La Ley de Sentencia Suspendida ha sido objeto de múltiples y recientes enmiendas: Ley Núm. 56 de 5 de agosto de 1993; Ley Núm. 8 de 30 de noviembre de 1989; Ley Núm. 33 de 27 de julio de 1993, y Ley Núm. 86 de 17 de agosto de 1994.

*cutivamente* significa "[s]in lapso de separación; con inme-
diación en el tiempo. Por orden o turno". G. Cabanellas,
*Diccionario Enciclopédico de Derecho Usual,* 20ma ed. rev.,
Buenos Aires, Ed. Heliasta, 1981, T. II, pág. 300. En con-
traste, *concurrencia* implica "correr junta y
simultáneamente". G. Cabanellas, *Diccionario Jurídico
Elemental,* 6ta reimpresión, Buenos Aires, Ed. Heliasta,
1983, pág. 61. Un tribunal sentenciador no puede imponer
una pena de reclusión obligatoria de cárcel y *a la vez* con-
ceder una sentencia suspendida que deje al convicto en
libertad. Sentenciar al convicto a cumplir *simultáneamente*
dos (2) penas *mutuamente excluyentes es imposible o una
ficción.* No procedía el cumplimiento *concurrente* de la
pena de cárcel con los otros delitos susceptibles de ser ob-
jeto del beneficio de una sentencia suspendida.(⁸)

La discreción judicial para otorgar el beneficio de sen-
tencia suspendida, aunque es amplia, no es absoluta. Está
supeditada al fiel cumplimiento de todos los requisitos del
Art. 2 de la Ley de Sentencia Suspendida, 34 L.P.R.A. sec.
1027, entre ellos, que *la persona no haya sido convicta por
alguno de los delitos excluidos de los efectos de la ley.*

## II

Finalmente, el remedio de ordenar la preparación de un
informe presentencia provisto en la opinión mayoritaria es
jurídicamente *prematuro y fútil.* Ordena hoy su prepara-
ción, sin considerar que las hermanas Molina Virola sólo
disfrutarán del beneficio de una sentencia suspendida
—asumiendo les fuera concedida— *después de cumplir tres*

---

(⁸) Se trata de una situación análoga a las visualizadas en la Regla 180 de
Procedimiento Criminal, 34 L.P.R.A. Ap. II, expositivas de varias instancias en que
no podrán cumplirse concurrentemente los términos de prisión, y por imperativo son
consecutivos. Igual a ciertos delitos excluidos por el legislador del beneficio de la
sentencia suspendida, la citada Regla 180 responde al interés de disuadir la comisión
de ciertos delitos. "La ficción de simultaneidad no puede prevalecer. La consolidación
de casos no tiene ese alcance. Las sentencias dictadas en un mismo día y acto no
afectan la realidad fáctica ...." *Pueblo v. Valentín Rivera,* 119 D.P.R. 281, 285 (1987).

*(3) años* en prisión por infringir el Art. 8 de la Ley de Armas. Al ordenar *anticipadamente* la preparación del informe presentencia, olvida que desde ahora la información suministrada carecerá de toda eficacia en el futuro; *será obsoleta para 1999.* Esa lejanía destruye la *coetaneidad* que debe existir entre la investigación y el uso inmediato que presupone como instrumento decisorio útil.

Conforme el Art. 59 del Código Penal, 33 L.P.R.A. sec. 3283, y las Reglas 162.1 y 162.2 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, el propósito del informe presentencia es proveerle *información objetiva y exacta* al Juez para ayudarle a determinar la sentencia más apropiada.[9] Dicho informe constituye un abarcador estudio social del convicto. Presenta una descripción detallada del ofensor en términos de su comportamiento pasado, patrones de conducta y experiencias. Incluye una evaluación de sus motivaciones, receptibilidad a la ayuda y capacidad para autodirección, así como un estudio de las oportunidades disponibles e interacción en la comunidad.[10]

Sólo así el juez sentenciador tendrá los elementos de juicio necesarios para estimar, de manera confiable, el riesgo que constituye para la sociedad que el convicto permanezca en libertad y la probabilidad de rehabilitación. La determinación judicial debe estar basada en una evaluación minuciosa de los atributos y debilidades, tanto personales como sociales, del convicto. *El éxito de esta evaluación dependerá de cuán exacta y actualizada sea la información.*[11] No hay que esforzarse mucho para concluir

---

[9] Este informe es mandatorio en delitos graves como en el caso de autos. 33 L.P.R.A. sec. 3283.

[10] El oficial probatorio deberá preparar un informe que contenga información sobre el historial criminal del convicto, el ambiente familiar y social donde se desarrolló, impacto económico, emocional y físico de su delito en la víctima y sus familiares, fuentes de ingreso, educación, su estado mental y físico, actitudes hacia el crimen, víctimas y el sistema de justicia. *Manual de Normas y Procedimientos Programa de Libertad a Prueba y Bajo Palabra de la Administración de Corrección.*

[11] Véase R.O. Dawson, *Sentencing: the Decision as to Type, Length, and Conditions of Sentence,* 2da ed., Boston, Ed. Little, Brown and Co., 1969, págs. 70–99;

que un informe presentencia que ignore los próximos tres (3) años de la vida de las hermanas Molina Virola no es confiable y carece de valor para evaluar la capacidad de rehabilitación y adaptación social de éstas. *La decisión de la mayoría pone en peligro el bienestar de la comunidad y nulifica cualquier esfuerzo rehabilitador del Estado.*

La mayoría hoy avala una sentencia ilegal, contraria a derecho. Por mandato expreso legislativo no cabe el beneficio de una sentencia suspendida. Se trata de un curso decisorio equivocado que pone en jaque los propósitos sociales y comunitarios de ese remedio.([12])

B.A. Kay y C.B. Vedder, *Probation and Parole,* 1ra ed., Illinois, 1963, págs. 28–52.

([12]) A manera de epílogo, el historial, trámite y proceso de aprobación del Art. 6A de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 416a, y la enmienda al Art. 2 de la Ley de Sentencia Suspendida conforme la Ley Núm. 8 de 30 de noviembre de 1984, revela un error de la editorial Equity (hoy Michie Butterworth) en la codificación de ambas leyes. Es lamentable y pone de manifiesto lo delicado de su encomienda.

La obligación de Equity es imprimir y publicar el texto de la ley tal y como le es certificada por el Departamento de Estado. En lugar de comentarla equivocadamente, *debieron aclarar que el citado Art. 6(A) no existía.*