EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>    Recurrido<br><br>                    v.<br><br>Eduardo R. Ramos Muñoz<br><br>    Peticionario | Certiorari<br><br>2003 TSPR 168<br><br>160 DPR \_\_\_\_ |

Número del Caso: CC-2002-685


Fecha: 14 de noviembre de 2003


Tribunal de Circuito de Apelaciones:
                    Circuito Regional III


Juez Ponente:
                    Hon. Ismael Colón Birriel

Abogado de la Parte Peticionaria:
                    Lcdo. José A. Rubio Pitre

Oficina del Procurador General:
                    Lcda. Lisa M. Durán Ortiz
                    Procuradora General Auxiliar


Materia: Homicidio, Art. 95-A y Art. 8 Ley de Armas



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                     CC-2002-685     Certiorari

Eduardo R. Ramos Muñoz

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 14 de noviembre de 2003.

Tenemos la ocasión para volver a examinar el sentido y alcance de lo dispuesto en el inciso(a) de la Regla 185 de Procedimiento Criminal, en lo relativo a la corrección de una sentencia supuestamente ilegal.

I

El peticionario Eduardo Ramos Muñoz fue convicto por la comisión de los delitos de homicidio, agresión agravada menos grave y violación al Art. 8 de la Ley de Armas. El Tribunal de Instancia lo condenó **el 15 de noviembre de 1995** a cumplir en forma concurrente seis años de reclusión por el delito de homicidio y seis meses por la agresión agravada; también lo

condenó a tres años de reclusión por la violación a la Ley de Armas, a cumplirse en forma consecutiva con las otras penas, para un total de nueve años de reclusión. **Se le negó el beneficio de una sentencia suspendida**.

Ramos Muñoz apeló su sentencia y el 27 de agosto de 1997, el Tribunal de Circuito de Apelaciones resolvió que el peticionario tenía derecho a una sentencia suspendida en cuanto a los delitos que no estaban excluidos de tal beneficio. Ello dio lugar a que el **15 de septiembre de 1997** el Tribunal de Primera Instancia, Sala Superior de Arecibo, enmendara la sentencia original para disponer que los seis años de reclusión por los delitos de homicidio y agresión agravada fuesen cumplidos al amparo del régimen de sentencia suspendida. Ese mismo día Ramos Muñoz fue **excarcelado** pues había cumplido en prisión más de lo que correspondía a la pena impuesta por la violación a la Ley de Armas.

Debe señalarse que el dictamen del foro apelativo del 27 de agosto de 1997, referido antes, fue impugnado ante nos oportunamente, pero **denegamos** la expedición del recurso impugnatorio mediante una Resolución de 5 de diciembre de 1997.

El asunto que nos concierne aquí se relaciona con el hecho de que Ramos Muñoz había completado estudios de Derecho en 1995, por lo que **en septiembre de 1999** tomó el examen de reválida para el ejercicio de la abogacía, el cual aprobó. Sin embargo, Ramos Muñoz no pudo jurar como abogado debido a que la Comisión de Reputación para el

Ejercicio de la Abogacía, avalada por este Tribunal, determinó que no se podía certificar el buen carácter y la reputación del aspirante por no haber extinguido todas las penas que le habían sido impuestas, referidas antes.

Así las cosas, Ramos Muñoz acudió ante el foro de instancia y solicitó la **reconsideración** de la sentencia del 15 de noviembre de 1995, a los fines de que la parte de dicha sentencia impuesta por el homicidio fuera cumplida de modo **concurrente** con las penas impuestas por los demás delitos. El 20 de enero de 2002, el foro de instancia dictó una sentencia enmendada y acogió lo solicitado por Ramos Muñoz.

Entonces el Ministerio Público recurrió ante el foro apelativo, para impugnar la sentencia enmendada referida en el párrafo anterior. **Adujo allí que el tribunal de instancia carecía de jurisdicción para reconsiderar la sentencia original porque la solicitud de reconsideración fue presentada fuera de los términos fijados en la Regla 185 de Procedimiento Penal**.

El foro apelativo expidió el auto solicitado por el Ministerio Público, y el 22 de agosto de 2002 dictó la sentencia que el peticionario ha impugnado ante nos aquí. Dicho tribunal rechazó el planteamiento jurisdiccional presentado por el Ministerio Público, al resolver que no le aplicaba al caso de autos los términos provistos por la citada Regla 185 de Procedimiento Penal. No obstante, el foro apelativo procedió *motu proprio* a **revocar** la sentencia impugnada por entender que no se podía ordenar que las

penas pendientes se cumplieran concurrentemente con la pena ya cumplida porque ésta ya estaba extinguida. Más aun, el foro apelativo también se expresó *motu proprio* con respecto a la sentencia del foro de instancia del 15 de septiembre de 1997, **la que se emitió siguiendo un mandato del propio foro apelativo y la cual no había sido impugnada en momento alguno por el Ministerio Público**. Decretó que dicha sentencia era ilegal, y por ende nula, por entender ahora el foro apelativo que el beneficio de sentencia suspendida no puede concederse de ningún modo a alguien que ha sido convicto por utilizar un arma de fuego en la comisión de un delito grave. El foro apelativo, pues, le dio marcha atrás a un dictamen previo suyo que nunca fue impugnado por nadie; y además, anuló una sentencia del foro de instancia que nadie había impugnado. En vista de todo ello, dicho foro, por voto de 2-1, reinstaló la sentencia del 15 de noviembre de 1995; y revocó no sólo la sentencia del foro de instancia **de 20 de enero de 2002**, sino también la emitida por dicho foro el **15 de septiembre de 1997**.

Inconforme con este dictamen, Ramos Muñoz acudió ante nos por medio de un recurso de *Certiorari*. El 25 de octubre de 2002 expedimos dicho recurso a fin de revisar la sentencia emitida por el foro apelativo el 22 de agosto de 2002. El 14 de febrero de 2003 accedimos a lo solicitado por el peticionario de que se acogiese su petición de *Certiorari* como su alegato. El 20 de marzo de 2003 el Procurador General presentó el alegato del Pueblo. Pasamos a resolver.

II

En lo medular en el caso de autos, nos corresponde decidir si el Tribunal de Circuito de Apelaciones tenía autoridad para "corregir" inicialmente una sentencia del foro de instancia que era supuestamente errónea, a pesar de que **desde hacía mucho tiempo** dicha sentencia había advenido final y firme; **a pesar de que nadie le solicitó que la "corrigiese"**; y a pesar de que la sentencia en cuestión se emitió precisamente por un mandato previo del propio Tribunal de Circuito de Apelaciones, **que nosotros declinamos revisar**.

La "corrección" de la sentencia en cuestión por el foro apelativo, además, apareja la grave consecuencia de que un convicto que ya había cumplido con la pena resultante de la sentencia de instancia "corregida", tenga que encarar la terrible realidad de regresar al presidio, a pesar de haber **transcurrido ya seis años desde que dicho convicto cumplió la referida pena carcelaria**.

El foro apelativo basó el inaudito dictamen que ha sido impugnado ante nos, en lo dispuesto en la Regla 185(a) de Procedimiento Criminal, que en lo pertinente lee así:

> "El **tribunal sentenciador** podrá corregir una sentencia ilegal en cualquier momento"

Es evidente que es erróneo el decreto del foro apelativo en cuestión. Conforme a lo que ya habíamos resuelto antes, le compete al foro de instancia corregir inicialmente una sentencia penal supuestamente ilegal, a petición del

Ministerio Público. No puede hacerlo el Tribunal de Circuito de Apelaciones como lo hizo en el caso de autos.

En efecto, en Pueblo v. Bigio Pastrana, 116 D.P.R. 748 (1985) el Procurador General de Puerto Rico nos planteó en su informe que la sentencia impuesta por el tribunal de instancia al convicto en dicho caso era menor que la pena mínima dispuesta por el Código Penal para el delito en cuestión. Nos pidió el Estado, pues, que aumentáramos la pena impuesta al convicto, al amparo de lo dispuesto precisamente en la referida Regla 185(a) de Procedimiento Penal. **Respondimos al planteamiento del Procurador General en la negativa**. Declinamos ejercer nuestra jurisdicción para entender en dicho planteamiento y señalamos que le tocaba al **foro de instancia** dilucidar el asunto, **a instancias del Procurador General**. Expresamente resolvimos que la corrección de una sentencia ilegal según dispuesto en la Regla 185(a) le correspondía específicamente al **"tribunal sentenciador"**. Pueblo v. Bigio Pastrana, *supra*, pág. 762. Por ende, no le compete al Tribunal de Circuito de Apelaciones hacerlo como lo hizo aquí.

Como claramente indicamos en Pueblo v. Bigio Pastrana, *supra*, le corresponde al Procurador General llevar un planteamiento sobre sentencia ilegal al foro de instancia que la dictó. Le compete a ese foro entonces dilucidar inicialmente si en efecto dictó una sentencia ilegal. Nada de ello ha sucedido en el caso de autos, que presenta, además, la cuestión de si el debido proceso de ley permite que ahora, **más de seis años después de haber cumplido la**

**sentencia supuestamente ilegal** puede el convicto ser re-encarcelado para cumplir así el remanente de la pena pendiente.

## III

Por los fundamentos expuestos, se revoca el dictamen del foro apelativo del 22 de agosto de 2002.[1]

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Corrada del Río emitió una opinión disidente, a la cual se une el Juez Presidente Interino señor Rebollo López. El Juez Asociado señor Rivera Pérez no intervino.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo

---

[1] La parte de ese dictamen relativa a la revocación de la sentencia del foro de instancia del 20 de enero de 2002 se ha tornado **académica**, en vista de que Ramos Muñoz terminó de cumplir **con todas las penas** al amparo del régimen de sentencia suspendida el **17 de septiembre de 2003**. Por ello, no procede que consideremos dicha parte del dictamen del foro apelativo impugnado aquí.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.

                                    CC-2002-685

Eduardo R. Ramos Muñoz

    Peticionario

Opinión Disidente emitida por el Juez Asociado señor Corrada del Río, a la cual se une el Juez Presidente Interino señor Rebollo López

San Juan, Puerto Rico, a 14 de noviembre de 2003.

Mediante la Sentencia que hoy se certifica, una mayoría de este Tribunal resuelve otorgarle eficacia jurídica a una sentencia emitida contrario a lo permitido por la Ley de Sentencia Suspendida y Libertad a Prueba, 34 L.P.R.A. §§ 1026 *et seq.*

Por entender que una sentencia así dictada es radicalmente nula, y en vista de que el ordenamiento procesal penal vigente le otorga jurisdicción a los tribunales para corregir una sentencia ilegal en cualquier momento, confirmaríamos la Sentencia del honorable Tribunal de Circuito de Apelaciones.

I

Allá para el 6 de octubre de 1995, el Sr. Eduardo Ramos Muñoz ("Sr. Ramos Muñoz" o "el peticionario") fue declarado culpable por los

delitos de homicidio, agresión agravada menos grave y de violación al Artículo 8 de la Ley de Armas, 25 L.P.R.A. §418.[2]  Conforme a tal veredicto, el Tribunal de Primera Instancia (en adelante, "TPI") dictó sentencia el 15 de noviembre de 1995, condenando al peticionario a cumplir seis (6) años de reclusión por el delito de homicidio; tres (3) años por violación al Artículo 8 de la Ley de Armas, a ser cumplidos de forma consecutiva con la pena del delito de homicidio; y seis (6) meses por el delito de agresión agravada, concurrentes con las penas anteriores.  El TPI indicó que de no impedírselo la Ley de Sentencia Suspendida y Libertad a Prueba, *supra* (en adelante, "Ley de Sentencia Suspendida"), hubiera concedido la probatoria para los delitos de homicidio y agresión agravada menos grave.  Sin embargo, dicho foro entendió que una vez convicta una persona por un delito excluido del beneficio de sentencia suspendida, el tribunal carece de facultad para conceder el beneficio con respecto a los otros delitos, aunque éstos no estén taxativamente excluidos.  Cabe mencionar que para la fecha en que ocurrieron los hechos en cuestión, el peticionario era estudiante de Derecho, habiendo adquirido su grado al momento de dictarse la referida sentencia.

Así las cosas, el peticionario apeló dicho dictamen ante el Tribunal de Circuito de Apelaciones (en adelante,

---

[2]  Los hechos por los que fue hallado culpable ocurrieron el 6 de enero de 1995.  De dichos eventos resultó muerto el Sr. Edmundo Ramos Rosario, sobrino del peticionario.  El Sr. Edmundo Ramos Román, hermano del peticionario y padre del occiso, fue herido de bala. *Véase* Apéndice, a la pág. 35.

"TCA"), alegando que erró el TPI en cuanto no le concedió el beneficio de sentencia suspendida por los delitos de homicidio y agresión agravada menos grave. El TCA consideró el recurso y, el 27 de agosto de 1997, emitió una sentencia mediante la cual resolvió que habiendo el TPI encontrado que al peticionario le aplicaba el beneficio de sentencia suspendida en todos los delitos imputados, con excepción del cargo por el Art. 8 de la Ley de Armas, procedía que dicho foro dispusiera a tal efecto una vez recibiera el mandato. De dicho dictamen, el peticionario acudió ante este Tribunal mediante recurso de apelación, **solicitando la revisión de otros aspectos de la decisión del TCA**.[3] El recurso fue atendido como uno de *certiorari*, denegándose mediante Resolución de 5 de diciembre de 1997.

En el ínterin, el 17 de septiembre de 1997, a tenor con la referida sentencia del TCA, el TPI enmendó las sentencias de homicidio y agresión agravada menos grave para que fueran cumplidas bajo el régimen de sentencia suspendida. Ese mismo día el peticionario fue excarcelado, ya que había cumplido más del tiempo correspondiente a la sentencia por infracción al Art. 8 de la Ley de Armas (3 años).

Dos (2) años después de emitirse la referida sentencia enmendada, el peticionario solicitó el examen de reválida de abogado y, tras aprobarla, se inició el proceso

---

[3] Específicamente, el peticionario alegó que el jurado había incurrido en error manifiesto en la determinación de culpabilidad y apreciación de la prueba, y que se le violó el derecho al debido proceso de ley al no ofrecérsele un juicio justo e imparcial.

correspondiente a considerar su admisión al ejercicio de la profesión. Conforme al trámite usual, la Comisión de Reputación para el Ejercicio de la Abogacía comenzó su investigación sobre el carácter y aptitud moral del peticionario. No obstante, luego de evaluar el expediente del Sr. Ramos Muñoz, la Comisión entendió que no estaba en condiciones para certificar su buena reputación, ya que éste no había agotado la pena a la que fue sentenciado. Aún así, la Comisión procedió a elevar el asunto ante nos, por entender que se trataba de una cuestión de estricto derecho.

Tras evaluar el caso, emitimos una Resolución denegando la solicitud de admisión del peticionario. Sin embargo, en vista de la importancia del asunto, acogimos una segunda moción de reconsideración y emitimos una Opinión *Per Curiam* en la cual concluimos que la Comisión de Reputación no podía certificar el buen carácter y reputación del aspirante hasta que éste no extinguiera su pena. *Véase In re Eduardo Ramos Muñoz*, res. el 10 de octubre de 2001, 155 D.P.R. __ (2001), 2001 T.S.P.R. 144, 2001 J.T.S. 143.

En vista de ello, el 9 de abril de 2001, el peticionario acudió ante el TPI y solicitó la reconsideración de la sentencia dictada por dicho foro el 17 de septiembre de 1997, ***a los fines de que la pena de tres (3) años impuesta por violación al Art. 8 de la Ley de Armas se considerara cumplida concurrentemente con la pena de seis (6) años impuesta por el delito de homicidio.*** A la fecha de la solicitud, el peticionario ya había extinguido en prisión

la pena de tres (3) años por la Ley de Armas, y había cumplido cuatro (4) de los seis (6) años por el delito de homicidio. El Ministerio Público se opuso a tal petición y planteó que el tribunal carecía de jurisdicción para modificar la referida sentencia.

Atendidos los argumentos de las partes, el 29 de enero de 2002, el TPI emitió una sentencia enmendada en la que determinó que, según lo resuelto en *Pueblo v. Tribunal Superior*, 104 D.P.R. 650 (1976), tenía facultad para revisar en cualquier momento una sentencia dictada en probatoria. Así pues, resolvió que el caso de autos era uno adecuado para reconsiderar, concediéndole al peticionario lo solicitado.[4]

Inconforme, el Procurador General acudió ante el TCA, planteando que el TPI carecía de jurisdicción para reducir la sentencia en cuestión, toda vez que habían vencido los términos dispuestos para ello por la Regla 185(a) de Procedimiento Criminal, 34 L.P.R.A., Ap. II, R. 185(a). Además, adujo que lo resuelto en *Pueblo v. Tribunal Superior*, *supra*, era inaplicable a las circunstancias del presente caso, dado que lo resuelto en aquella ocasión se limitaba a casos bajo el palio de la Ley de Sustancias Controladas, 24 L.P.R.A. § 2101 *et seq*.[5]

---

[4] *Véase* Apéndice, a la pág. 29.
[5] *Véase* Apéndice, a la pág. 38.

Luego de evaluar los méritos del caso, el TCA revocó la sentencia recurrida.[6] Sin embargo, en lugar de resolver atendiendo los asuntos planteados, el TCA, *motu proprio*, revocó a base de que la sentencia de 17 de septiembre de 1997— la cual concedió al peticionario el beneficio de la sentencia suspendida— constituía una sentencia ilegal. A tenor con ello, dicho foro revocó la referida sentencia de 17 de septiembre de 1997, dejando en pleno vigor las sentencias originalmente dictadas el 15 de noviembre de 1995.[7] El TCA fundamentó su proceder en la Regla 185(a) de Procedimiento Criminal, *supra*, que le permite a un tribunal corregir una sentencia ilegal en cualquier momento, y en el Artículo 2 de la Ley de Sentencia Suspendida, 34 L.P.R.A. § 1027, que establece que una persona que ha utilizado un arma de fuego durante la comisión de un delito grave, o su tentativa, está excluida de sus beneficios. A consecuencia de dicho dictamen, el peticionario perdió el privilegio de

---

[6] Véase Sentencia de 22 de agosto de 2002. La Sentencia fue emitida por el panel integrado por los jueces Soler Aquino, Colón Birriel y Escribano Medina, emitiendo el primero un voto disidente.

[7] Este panel también resolvió, para fines argumentativos, que de acuerdo al caso de *Pueblo v. Tribunal Superior*, *supra*, los tribunales tienen jurisdicción para modificar una sentencia que se cumple de manera suspendida, aunque el caso en cuestión no sea uno bajo el palio de la Ley de Sustancias Controladas. Sin embargo, condicionó dicha jurisdicción a que las penas a revisarse no se hayan extinguido. Debido a que el peticionario ya había extinguido su pena por la violación a al Art. 8 de la Ley de Armas, *supra*, el TCA entendió que no procedía la modificación de la sentencia en este caso. *Véase* Apéndice, a la pág. 14.

cumplir el remanente de su pena bajo el régimen de sentencia suspendida.

Así las cosas, el 19 de septiembre de 2002, el peticionario presentó ante nos un recurso de *certiorari* y una Moción en Auxilio de Jurisdicción, en la que nos solicitó que emitiésemos una orden paralizando la ejecución del mandato del TCA, ya que ello implicaría el arresto y la encarcelación del peticionario.

Las controversias planteadas en el recurso del peticionario se reducen a dos, a saber: 1) si el TCA tenía facultad para revocar la sentencia dictada por el TPI el 17 de septiembre de 1997, que le concedió al peticionario los beneficios de una sentencia suspendida; y 2) si erró el TCA al decidir que el TPI no tenía jurisdicción para enmendar las sentencias dictadas originalmente, para que las penas impuestas concurrentemente por los delitos de homicidio y agresión agravada, fueran cumplidas concurrentemente también con la pena ya extinguida por infracción al Art. 8 de la Ley de Armas.

El 20 de septiembre de 2002, emitimos una Resolución paralizando los procedimientos ante el TPI hasta que otra cosa se dispusiera. Posteriormente, el 25 de octubre de 2002, expedimos el auto de *certiorari* solicitado.

Por las razones que se exponen a continuación, confirmaríamos el dictamen recurrido. Veamos.

II

Sabido es que en nuestro ordenamiento procesal la sentencia es el pronunciamiento judicial de la pena que se le impone al acusado tras fallo o veredicto de culpabilidad. *Pueblo v. Martínez Lugo*, res. el 10 de febrero de 2000, 150 D.P.R. ___ (2000), 2000 T.S.P.R. 20, 2000 J.T.S. 39; *Pueblo v. Tribunal Superior*, 94 D.P.R. 220, 223 (1967). Del mismo modo, nuestro ordenamiento provee para que una vez dictada una sentencia para un caso específico, el tribunal modifique su dictamen si se verifican ciertas condiciones. A esos efectos, la Regla 185(a) de Procedimiento Criminal,[8] *supra*, dispone que:

> *[e]l tribunal sentenciador podrá corregir una sentencia ilegal en cualquier momento.* Asimismo podrá, por causa justificada y en bien de la justicia, rebajar una sentencia dentro de los noventa (90) días de haber sido dictada, siempre que la misma no estuviere pendiente en apelación, o dentro de los sesenta (60) días después de haberse recibido el mandato confirmando la sentencia o desestimando la apelación o de haberse recibido una orden denegando la solicitud de *certiorari*. (énfasis suplido).[9]

Como se puede observar, la citada Regla distingue la jurisdicción correctiva del tribunal sentenciador para dos supuestos diferentes. Mientras que la primera oración del estatuto dispone para la corrección de una sentencia ilegal, la segunda provee el mecanismo y los términos para que ese foro rebaje una sentencia dictada conforme a derecho.

_____

[8] Esta Regla proviene de la Regla 35 de las de Procedimiento Criminal Federal, 18 U.S.C.A., R.35.

[9] Nótese que la Regla provee para la corrección de la *sentencia*, no del fallo o veredicto de culpabilidad. Es decir, ésta no provee un vehículo para atacar colateralmente los errores anteriores al pronunciamiento de la sentencia.

En cuanto al primer supuesto, hemos resuelto que una sentencia ilegal es aquella que un tribunal dicta sin jurisdicción o autoridad, ***en abierta contravención al derecho vigente***.[10] *Pueblo v. Pérez Rivera*, 129 D.P.R. 306, 322 (1991); *Pueblo v. Lozano Díaz*, 88 D.P.R. 834, 838 (1963); Ernesto L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Vol. III, p.416, Ed. Forum (1995). En consecuencia, una sentencia así dictada es nula e inexistente, ya que los estatutos de penalidad son jurisdiccionales, "por lo que limitan el propio poder de la Corte." *Pueblo v. Lozano Díaz*, *supra*, a la pág. 840. Dado que una actuación judicial inválida no debe conllevar consecuencias legales, la citada regla permite al tribunal, en cualquier momento, corregir una sentencia que adolezca de ilegalidad. *Pueblo v. Martínez Lugo*, *supra*; *Pueblo v. Casanova Cruz*, 117 D.P.R. 784 (1986). ***Tal corrección la puede promover el tribunal sua sponte, incluso a nivel apelativo, e indistintamente de si el convicto ya empezó a extinguirla***. *Pueblo v. Pérez Rivera*, *supra*, a la pág. 323; *Pueblo v. Castro Muñiz*, 118 D.P.R. 625, 653 (1987); *Pueblo v. Lozano Díaz*, *supra*, a la pág. 841.[11] ***Más aún, la facultad***

---

[10] En la jurisdicción federal se le ha dado igual significado. *Véase U.S. v. Morgan*, 346 U.S. 502 (1954) ("Sentences subject to correction...are those that the judgement of conviction did not authorize"); *véase además* Charles Alan Wright, Federal Practice and Procedure: Federal Rules of Criminal Procedure, § 582, p. 381 (1982) ("A sentence is illegal within the meaning [of Rule 35] if it is in excess of the statutory provision, ***or in some other way contrary to the applicable statute***") (énfasis suplido).

[11] *Véase además Bozza v. U.S.*, 330 U.S. 160 (1947).

***del tribunal para corregir una sentencia ilegal se extiende***

***a hacer más onerosa la pena, en situaciones en que la pena***

***más benigna originalmente impuesta era contraria a la ley.***
Chiesa Aponte, *supra*, a la pág. 416 (énfasis suplido).[12]

Por el contrario, una sentencia legal es aquella que se dicta dentro de las facultades y poderes del tribunal sentenciador. *Pueblo v. Lozano Díaz*, *supra*, a la pág. 838. No obstante, una sentencia legal puede ser considerada posteriormente como inadecuada por el tribunal, en cuyo caso, cualquier cambio queda supeditado a los términos y condiciones impuestas por la Regla 185(a), *supra*. Transcurridos los términos de dicha Regla, y expirados los plazos para presentar reconsideración, apelación, *certiorari* o relevo de sentencia— según sea el caso— la sentencia válidamente dictada adviene final y firme, perdiendo jurisdicción los tribunales para revisarla.

De otra parte, nuestro ordenamiento establece unos mecanismos para que, en casos apropiados y pertinentes, un convicto cumpla su sentencia fuera de prisión. Dentro de éstos se encuentra el proceso establecido por la Ley de Sentencia Suspendida, *supra*. Al aplicar anteriormente esta ley, hemos reconocido que su propósito es hacer viable la

---

[12] A modo ilustrativo, en ocasiones anteriores hemos considerado ilegales aquellas sentencias que imponen penalidades que figuran fuera de los mínimos y máximos dispuestos por ley, así como las que imponen un castigo distinto al establecido. *Véase Pueblo v. Martínez Lugo*, *supra*; *Pueblo v. Valdés Sánchez*, 140 D.P.R. 490 (1996); *Pueblo v. Bigio Pastrana*, 116 D.P.R. 748 (1985); *Pueblo v. Bell Pound*, 101 D.P.R. 41 (1973); *Pueblo v. Lozano Díaz*, *supra*.

política pública de rehabilitación enunciada en la sección 19 del Art. VI de la Constitución de Puerto Rico, en cuanto fomenta la reintegración del convicto a la sociedad como miembro productivo. *Pueblo v. Álvarez Rodríguez*, res. el 29 de junio de 2001, 154 D.P.R. __ (2001), 2001 T.S.P.R. 99, 2001 J.T.S. 102.

No obstante este propósito, la referida ley también reconoce la necesidad de proveer para la seguridad de la comunidad en general. Por ello, el legislador estableció unos mecanismos para asegurar que personas peligrosas no regresen innecesariamente a circular por las calles del país. *Id.* A esos efectos, el Art. 2 de la Ley de Sentencia Suspendida, *supra*, según enmendada por la Ley Núm. 33 de 27 de julio de 1993, dispone en lo pertinente que:

> El Tribunal de Primera Instancia podrá suspender los efectos de la sentencia que se hubiera dictado en todo caso de delito grave ***que no fuere** asesinato...o cuando la persona utilice o intente utilizar un arma de fuego en la comisión de un delito grave o su tentativa.* (énfasis suplido).

En el caso de *Pueblo v. Álvarez Rodríguez*, *supra*, tuvimos la oportunidad de interpretar el citado artículo. Ese caso trataba de una mujer convicta por el delito de homicidio e infracción a los Arts. 6 y 8 de la Ley de Armas, ofensas por las que el TPI le impuso una pena de diez (10) años en prisión por cada cargo de homicidio (2), y de tres (3) y cinco (5) años por los delitos bajo la Ley de Armas. Las penas se cumplirían concurrentemente y bajo el régimen de sentencia suspendida.

El Ministerio Público se opuso a dicha sentencia, alegando que la Ley de Sentencia Suspendida, *supra*, excluía expresamente de ese privilegio a toda persona que utilizara o intentara utilizar un arma de fuego en la comisión de un delito grave o su tentativa. El TCA no acogió el planteamiento del Ministerio Público, procediendo a confirmar lo resuelto por el TPI. Inconforme, el Ministerio Público acudió ante nos mediante recurso de *certiorari*.

Luego de analizar las disposiciones de dicha ley, resolvimos que tanto su letra como su historial legislativo exponen una inequívoca intención de excluir de sus beneficios a cualquier convicto de delito grave que utiliza un arma de fuego. *Id.*, a la pág. 9. Citando de la Exposición de Motivos de la Ley Núm. 33 de 27 de julio de 1993, expresamos que:

> [d]ado el peligro que representa para nuestra sociedad el que las personas que utilizan o intentan utilizar un arma de fuego en la comisión de un delito grave o su tentativa estén en la libre comunidad antes de que cumplan el término de reclusión que se les imponga, esta ley excluye del beneficio de la sentencia suspendida y de la libertad bajo palabra a dichas personas. *Id.*

Asimismo, concluimos en dicho caso que nuestra decisión en *Pueblo v. Zayas Rodríguez*, 147 D.P.R. 530 (1999), no era de aplicación por ser ese caso uno interpretativo del derecho vigente antes de la enmienda de 1993.[13]

---

[13] En *Pueblo v. Zayas Rodríguez*, *supra*, nos enfrentamos a una situación en la que aplicaba la ley anterior a la enmienda de 1993, cuya letra e historial legislativo presentaban unas supuestas incongruencias que sembraban duda en cuanto a la intención del legislador de excluir de los

Por tanto, es un hecho indiscutido que a partir de la enmienda introducida por la Ley Núm. 33 de 27 de julio de 1993, es derecho positivo en Puerto Rico que aquellas personas que cometan un delito grave utilizando un arma de fuego están excluidas del beneficio de la sentencia suspendida.

Conforme a este marco jurídico, resolvemos la controversia ante nos.

III

En el caso de marras, el peticionario alega que el TCA actuó sin jurisdicción al revocar la sentencia enmendada del TPI de 17 de septiembre de 1997, toda vez que ésta era legal, había advenido final y firme, y este Tribunal había denegado el auto para revisarla. Igualmente, arguye que de sostenerse el dictamen del TCA se estaría aplicando retroactivamente nuestra decisión de *Pueblo v. Álvarez Rodríguez*, *supra*. No tiene razón el peticionario.

Estamos patentemente ante un caso en el cual se dictó una sentencia ilegal. En la situación de autos, el peticionario fue hallado culpable del delito de homicidio

---

beneficios de la sentencia suspendida aquellos delitos cometidos utilizando un arma de fuego. En esa ocasión dirimimos la duda resolviendo a favor del acusado. Sin embargo, la alegada incongruencia fue corregida mediante la enmienda de 1993, por lo que el raciocinio de *Zayas Rodríguez*, *supra*, no se aplica a casos posteriores a ésta. *Pueblo v. Álvarez Rodríguez*, *supra*, a la pág. 8.

Igual lectura debe hacerse del caso *Pueblo v. Molina Virola*, 141 D.P.R. 713 (1996). De hecho, en ese caso expresamos que no se aplicó la enmienda de 1993 dado que los hechos en controversia eran anteriores a la entrada en vigencia de la misma. *Id.*, a la pág. 724, escolio 10.

(delito grave), habiendo utilizado un arma de fuego para realizarlo. Además, los actos por los que éste resultó culpable ocurrieron el 6 de enero de 1995, estando en plena vigencia la enmienda realizada en julio de 1993 a la Ley de Sentencia Suspendida, *supra*. Por consiguiente, al ser ese el derecho aplicable al momento de los hechos, incidió en error el TCA al modificar en 1997 la sentencia válidamente dictada por el TPI en octubre de 1995, a los efectos de que el peticionario cumpliera en probatoria la pena que se le impuso por los delitos de homicidio y agresión agravada. Al emitir un mandato a esos efectos, el TCA llevó al tribunal de instancia a dictar una sentencia ilegal, toda vez que la misma estaba en clara contravención de lo dispuesto por una ley vigente. ***Así pues, conforme a lo dispuesto por la Regla 185(a), supra, resolvemos que cualquier tribunal, a petición de parte o motu proprio, tenía jurisdicción para corregirla en cualquier momento, mientras ésta no se hubiese extinguido***.

La mayoría, por el contrario, apoya desmedidamente su decisión en unas expresiones de este Tribunal en el caso de *Pueblo v. Bigio Pastarana*, *supra*, a la pág. 762, donde se señala que la corrección de una sentencia ilegal, según dispuesto en la Regla 185(a), *supra*, corresponde ***únicamente*** al tribunal sentenciador, tras planteárselo el Ministerio Público. Nuestro criterio es que la referidas expresiones constituyen una interpretación limitada y errónea que no debemos reiterar o perpetuar. Adviértase, además, que lo

señalado en ese caso sobre este particular está en conflicto con lo **resuelto** en *Pueblo v. Lozano Díaz*, *supra*, caso cuya controversia medular era la corrección de una sentencia ilegal, cuyos fundamentos son similares a los que aquí esbozamos, y que *Bigio Pastrana*, *supra*, no revocó.[14]

El así resolver responde a nuestro deber de hacer cumplir cabalmente el mandato de la ley. Como expresáramos en *Pueblo v. Álvarez Rodríguez*, *supra*, a la pág. 11, el mero hecho de que podamos estar en desacuerdo con dicho mandato nunca será razón suficiente para ignorarlo. Asimismo, reiteramos que nuestro sistema político se basa primordialmente en el derecho del pueblo a autogobernarse, siendo la Asamblea Legislativa el principal emblema de la voluntad democrática. *Id.* Por ende, ***independientemente de lo excepcionales que nos parezcan las circunstancias del caso ante nos***, no podemos resolver de un modo que contravenga de manera radical lo palmariamente establecido por el legislador. ***Recordemos que la discreción judicial para otorgar el beneficio de sentencia suspendida, aunque es amplia, no es absoluta; la misma está supeditada al fiel cumplimiento de todos los requisitos del Art. 2 de la Ley de Sentencia Suspendida, supra.***[15]

Conforme a ello, resolveríamos que actuó correctamente el TCA al corregir un error patente en la sentencia que

---

[14] *Véase* págs. 9-11, *supra*.

[15] Véase sobre este particular *Pueblo v. Zayas Rodríguez*, *supra* (Opinión Disidente del Juez Asociado señor Negrón García, a la cual se unieron los Jueces Asociados señores Rebollo López y Corrada del Río).

revisaba, mientras el peticionario aún permanecía bajo la jurisdicción correccional del Estado, y cuando la consecuencia de dicho error era la nulidad del dictamen recurrido.

Como último remedio, el peticionario puede invocar la clemencia ejecutiva, debiendo llevar su reclamo ante la Gobernadora de Puerto Rico. *Véase Pueblo v. Tribunal Superior*, 91 D.P.R. 539, 544 (1964).

IV

Por los fundamentos que anteceden, concluiríamos que no erró el TCA al decidir que la sentencia enmendada de 17 de septiembre de 1997 fue ilegal, por lo que procedía su corrección conforme a la Regla 185(a) de Procedimiento Criminal, *supra*.

Por ser otro el criterio de la mayoría, disentimos.

BALTASAR CORRADA DEL RÍO
Juez Asociado