Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>LEONARDO SOTO BUTLER<br><br>Apelante | TA2025AP00002 | Apelación procedente del Tribunal de Primera Instancia, Sala de Aguadilla<br><br>Criminal núm.: A FJ2022G0008<br><br>Por: Art. 283 CP Grave 2012 enmienda 2015 |
|---|---|---|

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Sánchez Ramos, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 31 de octubre de 2025.

El Tribunal de Primera Instancia (el "TPI") sentenció al Sr. Leonardo Soto Butler (el "Apelante" o "Imputado") a ocho (8) años de prisión, luego de que este fuese hallado culpable por infracción al Artículo 283 del Código Penal de Puerto Rico, 33 LPRA sec. 5376. Según se explica en detalle a continuación, concluimos que el TPI ejerció válidamente su discreción al denegar la solicitud del Imputado de cumplir su pena a través de una sentencia suspendida.

I.

Por hechos acontecidos el 5 de marzo de 2020, el Ministerio Público presentó cuatro (4) acusaciones contra el señor Soto Butler por violación a los Artículos 93(a) y 283 del Código Penal, 33 LPRA sec. 5142 y 5376, e infracción a los Artículos 6.05 y 6.14 de la Ley Núm. 168-2019, conocida como la Ley de Armas de 2020, 25 LPRA sec. 466d y 466m. En esencia, se le imputó que, mediante concierto y común acuerdo con el Sr. Nelvin Nieves López, le ocasionó la muerte a Angélica M. Méndez Arocho (la "Víctima") por medio de varios disparos realizados con un arma de fuego para la cual no tenía licencia. Además, se le imputó amenazar con causarle daño

físico a la Sa. Destiny J. López Meléndez (la "Testigo"), quien fue testigo o tenía conocimiento de los hechos.

Culminados los trámites procesales de rigor, se celebró un juicio por jurado del 8 al 17 de abril de 2024. Desfilada la prueba, el jurado emitió un veredicto de culpabilidad por el delito de amenaza o intimidación a testigos. Art. 283 del Código Penal, *supra*. En cuanto al delito de asesinato y las infracciones a la Ley de Armas, el Jurado emitió un veredicto de no culpable.

El TPI refirió al Apelante al Programa de Probatoria de Adultos para la realización del Informe Presentencia (el "Informe"). El Informe fue realizado por la Sa. Carmen López Serrano (la "Técnica Sociopenal"), técnico sociopenal del referido programa.

El 31 de julio, el TPI celebró la vista para dictar sentencia. El Apelante anunció que impugnaría el Informe. El 1 de agosto, el Apelante instó una *Moción Informando Por Qué Habremos de Impugnar el Informe Pre-sentencia.* La vista de impugnación del Informe se llevó a cabo el 20 de septiembre. Además, el 21 de octubre, el Apelante presentó una *Petición para que el Caso sea Trasladado a la Sala de Asuntos de Menores por Falta de Jurisdicción del Tribunal General.* En síntesis, alegó que el TPI carecía de jurisdicción, debido a que el delito de amenaza o intimidación de testigos no surgía de la misma transacción o evento del asesinato en primer grado. Por consiguiente, sostuvo que el delito de amenaza no podía procesarse en la Sala Superior de lo Criminal del TPI. En esa misma fecha, el Ministerio Público se opuso a la solicitud de traslado, mediante una *Moción en Oposición.*

El 12 de noviembre, el TPI emitió una *Sentencia* en la cual acogió el planteamiento de falta de jurisdicción del Imputado y desestimó la causa de acción en su totalidad. El TPI concluyó que no procedía ordenar el traslado a la Sala de Asuntos de Menores, sino que le correspondía al Procurador de Asuntos de Menores

determinar si iniciaba un proceso ante dicha Sala para que se ventilara el delito (o falta) de amenaza.

Inconforme, el Pueblo de Puerto Rico presentó un recurso (KLCE202401401), como resultado de lo cual, mediante una *Sentencia* de 5 de febrero de 2025 (la "Sentencia Anterior"), otro Panel de este Tribunal revocó la determinación del TPI y, por ende, reestableció el estado procesal en que se encontraba el caso de epígrafe antes de que fuera desestimado. Este Tribunal puntualizó que, bajo el Artículo 4(4) de la Ley Núm. 88 de 9 de julio de 1986, Ley de Menores de Puerto Rico (la Ley de Menores"), según enmendada, 34 LPRA sec. 2204(4),[1] una vez la Sala Superior de lo Criminal determina causa probable por el delito de asesinato, esta retiene su jurisdicción sobre el menor durante todo el proceso, aun cuando el menor no resulte convicto por dicho delito. **La Sentencia Anterior advino final y firme.**

Continuados los procedimientos, el TPI señaló la vista para la lectura de sentencia. La vista de lectura de sentencia y de impugnación del Informe se celebró el 19 de mayo. A continuación, un resumen de las porciones de la transcripción de la prueba oral relevantes a la controversia esgrimida por el Apelante.

Antes de comenzar la vista de impugnación, el Apelante informó al TPI que se reunió con el Ministerio Público y propondría una sentencia de ocho (8) años en probatoria, con supervisión electrónica (grillete) por un año. Transcurrido ese primer año, e independiente de cualquier otra vista de seguimiento, se propuso que el TPI celebrara una vista para verificar el ajuste del Apelante

---

[1] En lo pertinente, el Art. 4(4) de la Ley de Menores, *supra*, dispone como sigue:

La Sala de lo Criminal del Tribunal General de Justicia **conservará jurisdicción** sobre el menor aun cuando haga alegación de culpabilidad **o medie convicción por un delito distinto al asesinato** según definido en el inciso (a) del Artículo 106 del Código Penal del Estado Libre Asociado de Puerto Rico. Igualmente, conservará jurisdicción cuando el Tribunal de Primera Instancia, Sala de Menores, hubiere renunciado a la jurisdicción del menor y en el procedimiento ordinario como adulto al menor se le archivaran los cargos o se le encontrara no culpable. (Énfasis provisto).

para determinar si seguía con el grillete o no.[2]  Por su parte, el Ministerio Público indicó que ese era el acuerdo que presentaban.[3] No obstante, destacó que la técnica de servicios sociopenales se mantenía en su posición.[4]

Comenzada la vista, la Técnica Sociopenal indicó que está adscrita al Programa de la Comunidad de Aguadilla y que realizó el Informe el 31 de julio de 2024.  Admitió que luego no reinvestigó la situación del Apelante.[5]

La Técnica Sociopenal explicó las dos (2) direcciones que usó para hacer las entrevistas de personas colaterales al Apelante.[6] Admitió que en una dirección las personas entrevistadas del área no conocían al Imputado, mientras que en la otra dirección la "mayoría" de los vecinos favorecieron que este quedara bajo el régimen de sentencia suspendida.[7]  La Técnico Sociopenal admitió que no incluyó una razón matemática en cuanto a esa "mayoría" que favoreció al Apelante.  La Técnico Sociopenal afirmó que, aunque al principio el Apelante tuvo problemas por salidas no autorizadas, luego de informársele al TPI, no reflejó más problemas.[8]  Reconoció que el Apelante tampoco tuvo problemas por las pruebas toxicológicas que se le realizaron, ni tuvo algún otro asunto pendiente con el sistema de justicia.[9]

La Técnica Sociopenal admitió que no investigó el número de licencia de cannabis medicinal que aseguró tener el Apelante.[10]  En cuanto a la residencia del padre del Apelante como uno de los hogares propuestos para la sentencia suspendida, la Técnico Sociopenal no lo recomendó, debido a que no se ejercía control de la

---

[2] Transcripción de la prueba oral (TPO), de la pág. 3, línea 16 a la pág. 4, línea 5.
[3] TPO, pág. 6, líneas 11-19.
[4] TPO, pág. 7, líneas 10-12.
[5] Íd., líneas 18-22.
[6] TPO, pág. 9, líneas 1-15.
[7] Íd., líneas 16-23 y pág. 10, línea 1.
[8] TPO, pág. 11, líneas 9-13.
[9] Íd., líneas 14-21.
[10] TPO, pág. 27, líneas 11-22.

conducta del Apelante.[11]   A pesar de ello, aceptó que en la comunidad donde ubica dicha residencia los vecinos no emitieron opinión en torno a si debía dejarse en probatoria al Apelante.[12]

Durante el contrainterrogatorio, a preguntas del Ministerio Público, la Técnico Sociopenal aceptó que hizo constar en el Informe que, en la residencia de los abuelos, uno de los hogares propuestos para que el Apelante cumpliera la sentencia suspendida, este recibía visitas de personas de dudosa reputación.[13]   Aclaró que ello se refiere a personas "que tienen conductas pro-criminales".[14]   En cuanto a la residencia del padre del Apelante, la Técnico Sociopenal aseveró que los vecinos no quisieron opinar en cuanto a la sentencia suspendida y se resaltó que no había tenido problemas vecinales debido al poco tiempo que llevaba el Apelante residiendo allí.[15]   No obstante, si relacionaron al Imputado con un cuadro de consumo de marihuana por el olor que expedía desde la residencia.[16]   Añadió que se le señaló que, la mayor parte del tiempo, el Apelante se mantenía solo durante el día, debido a que su padre trabajaba la mayor parte del tiempo.[17]   Reconoció que indicó en el Informe que el Apelante mostró ser una "persona procriminal e influenciable en las relaciones de pares".   Asimismo, leyó las determinaciones que hizo en su Informe en cuanto a que el Apelante presentaba debilidades internas que debían ser manejadas y que proviene de una familia disfuncional con historial delictivo por agresiones y ley de armas.[18]

En cuanto a la entrevista a la madre del Apelante, la Técnica Sociopenal indicó que esta le dijo que el Apelante era muy inteligente, pero desde primer grado perdió el interés en la escuela.[19]

---

[11] TPO, pág. 28, líneas 7-10.
[12] Íd., líneas 19-23; pág. 29, líneas 1-4.
[13] TPO, pág. 36, línea 5-16.
[14] TPO, pág. 37, líneas 13-16.
[15] TPO, pág. 38, líneas 9-23.
[16] TPO, pág. 39, líneas 2-7.
[17] Íd., líneas 14-18.
[18] Íd., de la línea 19 a la pág. 40, línea 16.
[19] TPO, pág. 42, líneas 4-11.

Aseveró que la madre no buscó ayuda para ella y para su hijo.[20] Describió al padre del Apelante como una mala influencia por amistades, drogas, la familia paterna y por ser demasiado permisivo al no asumir suficiente control sobre la conducta de sus hijos.[21] La Técnico Sociopenal clarificó que, al momento de la investigación, el Apelante residía con su padre.[22] Asimismo, en ese momento, el Apelante, quien estudio hasta noveno grado, no trabajaba ni estudiaba.[23] Por otro lado, la Técnica Sociopenal clarificó que entrevistó a los Fiscales encargados del caso para conocer la participación del Imputado en la comisión del delito y medir otros aspectos que requería el Informe.[24]

En relación con el acercamiento que tuvo el Apelante con la Testigo, la Técnico Sociopenal declaró que la Testigo le indicó que, cuando llegó a celebrar el cumpleaños de una vecina a un establecimiento comercial llamado Varadero, vio al Apelante con un grupo de jóvenes que se le quedaron mirando y riéndose. Por otro lado, aseveró que la Testigo le refirió que tan pronto terminó de comer se fue rápido del lugar.[25]

En cuanto a que el Apelante no mostró arrepentimiento y no aceptó la comisión del delito, y se mantuvo hablando de forma despectiva hacia la Testigo, la Técnico Sociopenal indicó que el Apelante usó un lenguaje que desmoralizaba a la Testigo.[26] Afirmó que el Apelante le dijo que la Testigo "era una persona problemática, con impedimentos, con retraso mental, riéndose añadió que tenía palabras musicales, aludiendo a problemas del habla que posee la víctima".[27] Aseveró que el Apelante le manifestó que la Testigo era

---

[20] Íd, líneas 20-23.
[21] TPO, pág. 43, líneas 9-17.
[22] Íd., líneas 18-20.
[23] TPO, pág. 44, líneas 9-21.
[24] TPO, pág. 46, líneas 10-15
[25] TPO; de la pág. 48, línea 4 a la pág. 49, línea 22.
[26] TPO, pág. 50, líneas 3-11.
[27] TPO, pág. 52, líneas 2-6.

una "persona que no puede pensar ni hablar, que nadie le cree y que tenía un vicio de hierba y pepas con cojones".[28]

La Técnico Sociopenal declaró que el Apelante le negó haber amenazado a la Testigo.[29] Añadió que la Testigo tenía temor porque había otros casos contra otros acusados[30] y la Testigo recibió mensajes de texto de otras personas, pero "usaban nombres, información que solamente el imputado las conocía"; que por las palabras utilizadas se reconoció que era la versión de los hechos que el Apelante le dio al técnico sociopenal.[31]

Por último, la Técnico Sociopenal reiteró que el Apelante no contaba con supervisión directa "24 siete" en el hogar paterno propuesto.[32] El Apelante no cuenta con un hogar viable porque "no es un recurso familiar que se ejerce control".[33] Añadió que la Testigo, perjudicada del caso, tampoco favorecía la concesión del privilegio porque temía por su seguridad.[34]

En el re-directo, la Técnico Sociopenal no pudo asegurar si el incidente en el Restaurante El Varadero ocurrió antes o después de instalarse la supervisión electrónica al Apelante.[35] Admitió que no tenía el nombre de alguna de las personas de "dudosa reputación" con las que se relacionaba el Apelante porque la comunidad no quiso proveer esos nombres.[36] Por otro lado, a preguntas del Ministerio Público, la Técnico Sociopenal expresó que la Testigo tenía temor de represalias, y aunque se le orientó para que hiciera una querella, se rehusó por temor.[37]

Escuchados los argumentos de las partes y el testimonio de la Técnico Sociopenal, el 19 de mayo de 2025, el TPI le impuso al

---

[28] Íd., líneas 7-18.
[29] TPO, pág. 53, líneas 1-13.
[30] Íd., líneas 16-22.
[31] TPO, pág. 55, líneas 1-23.
[32] TPO, pág. 56, líneas 14-15.
[33] TPO, pág. 57, líneas 7-8.
[34] Íd., líneas 11-16.
[35] TPO, pág. 58, líneas 3-6.
[36] TPO, de la pág. 59, línea 22 a la pág. 60, línea 8.
[37] TPO, de la pág. 61, línea 19 a la pág. 62, línea 4.

Apelante una pena de reclusión de ocho (8) años. Además, ordenó la bonificación por el tiempo cumplido en detención preventiva y el pago de la pena especial de $300.00. Art. 61 del Código Penal, 33 LPRA sec. 5094.

En desacuerdo, el 16 de junio, el Apelante interpuso el recurso que nos ocupa; formula los siguientes señalamientos de error:

> 1. Erró el Tribunal al denegar la solicitud de sentencia suspendida sin expresar fundamentos en derecho ni motivación adecuada, a pesar de haberse celebrado una vista de Impugnación de Informe Presentencia, en violación al debido proceso de ley y al deber de ejercer racionalmente su discreción judicial.

> 2. Erró el Tribunal al denegar la solicitud de sentencia suspendida sin considerar como factor atenuante la edad del apelante al momento de los hechos, en contravención de principios constitucionales de proporcionalidad, rehabilitación y discreción judicial informada.

> 3. Erró el Tribunal de Primera Instancia al dictar sentencia condenatoria contra el apelante, en violación a su derecho al debido proceso de ley, por carecer de jurisdicción sobre su persona, toda vez que el apelante era menor de edad al momento de los hechos y fue absuelto del único delito que justificaba su procesamiento en el tribunal de adultos.

Posteriormente, se presentó la transcripción estipulada de la prueba oral vertida en la vista de lectura de sentencia. Además, el 11 de septiembre, el Apelante presentó su Alegato y añadió el siguiente error:

> 3. Erró el Tribunal de Apelaciones en su Resolución interlocutoria al revocar la sentencia del Tribunal de Primera Instancia y concluir que el tribunal de adultos conservaba jurisdicción para sentenciar a un menor por el delito de intimidación a testigos (Art. 283 del Código Penal de Puerto Rico), a pesar de que el menor fue absuelto del cargo original de asesinato y de que el delito convicto no es incluido ni forma parte del núcleo del evento homicida que justificó originalmente la jurisdicción penal ordinaria.

Por su parte, el 10 de octubre, el Pueblo de Puerto Rico, representado por la Oficina del Procurador General, instó un *Alegato del Pueblo de Puerto Rico*. Resolvemos.

II.

La Ley de Sentencia Suspendida y Libertad a Prueba, Ley Núm. 259 del 3 de abril de 1946 ("Ley 259"), según enmendada, 34 LPRA sec. 1026 *et seq.*, dispone de un sistema que confiere al convicto la oportunidad de cumplir su sentencia o parte de ella en libertad, mientras observe buena conducta y cumpla las condiciones impuestas por el tribunal sentenciador. *Pueblo v. Vázquez Carrasquillo*, 174 DPR 40, 46 (2008); *Pueblo v. Negrón Caldero*, 157 DPR 413, 417-418 (2002); *Pueblo v. Zayas Rodríguez*, 147 DPR 530, 535-536 (1999); *Pueblo v. Molina Virola*, 141 DPR 713, 718 (1996); *Pueblo v. Pacheco Torres*, 128 DPR 586, 589 (1991). La Ley 259 provee un mecanismo mediante el cual se adelanta el fin de convertir al convicto de delito en un miembro productivo de la sociedad. *Pueblo v. Bonilla*, 148 DPR 486, 494 (1999); *Pueblo v. Texidor Seda*, 128 DPR 578, 583 (1991), citando a *Pueblo v. Vega Vélez*, 125 DPR 188, 195 (1990); *Vázquez v. Caraballo*, 114 DPR 272, 275 (1983).

El "disfrute de una sentencia suspendida es un privilegio, y su concesión descansa en la sana discreción del tribunal". *Pueblo v. Vélez Torres*, 212 DPR 175, 182 (2923). "La concesión de este privilegio descansa, normalmente, en la sana discreción del tribunal". *Pueblo v. Álvarez Rodríguez*, 154 DPR 566, 570 (2001). Claro está, "la discreción del juez está limitada a que el delito no sea uno de los expresamente excluidos y que se cumplan cada uno de los requisitos establecidos en la Ley de Sentencia Suspendida y Libertad a Prueba". *Pueblo* v. *Vázquez Carrasquillo,* 174 DPR a las págs. 46-47.

A tenor con la Ley 259, de no estar un delito específicamente excluido de su ámbito, el TPI está facultado a ejercer la discreción de suspender los efectos de una sentencia siempre que (1) la persona no hubiere sido convicta, sentenciada y recluida en prisión por delito grave alguno con anterioridad a la comisión del delito por el cual fue

procesada y no se le hubieren suspendido los efectos de una sentencia anterior por delito grave; (2) las circunstancias en que se cometió el delito no evidencien que existe en el autor un problema de conducta o de carácter para cuya solución favorable, en interés de la debida protección de la comunidad, se requiera la reclusión de dicha persona en una institución penal; (3) el juez sentenciador tenga ante sí un *Informe Presentencia* del cual se pueda concluir que ningún aspecto de su vida evidencia que haya necesidad de que se le recluya en alguna institución penal; y (4) en los casos en que se tiene la obligación de pagar una pensión alimentaria, dicha persona haya cumplido con su obligación de hacer los pagos o esté acogido a un plan de pagos y esté cumpliendo con el mismo. Véase, Art. 2 de la Lewy 259, 34 LPRA sec. 1027(h); *Pueblo v. Vázquez Carrasquillo*, 174 DPR a las págs. 47-48. Además, "[n]o obstante el propósito rehabilitador" de la Ley 259, "esta debe atemperarse a la necesidad de proveer para la seguridad de la comunidad en general." *Álvarez Rodríguez*, 154 DPR a las págs. 570-571.

Por su parte, en cuanto al informe presentencia, las recomendaciones sobre la concesión o no de una sentencia suspendida no obligan al juez sentenciador, aun cuando la persona no tenga antecedentes penales. *Pueblo v. Ortega Santiago*, 125 DPR 203, 210 (1990), citando a *Pueblo v. Martínez Rivera*, 99 DPR 568, 575 (1971); *Pueblo v. Luciano*, 77 DPR 597, 601 (1954). Asimismo, la determinación de denegar la suspensión de una sentencia se presumirá justa y correcta. *Pueblo v. Acosta*, 92 DPR 887, 894 (1965), citando a *Pueblo v. Feliciano*, 67 DPR 247, 250 (1947).

Resaltamos que los tribunales apelativos no debemos intervenir con las determinaciones discrecionales del foro primario con el fin de sustituir su criterio por el nuestro. Sin embargo, esta deferencia cede cuando el TPI actúa con prejuicio, parcialidad, incurre en craso abuso de discreción o en error manifiesto. *Citibank*

*et al v. ACBI et al,* 200 DPR 724, 735-736 (2018). En cuanto a las guías existentes para determinar cuándo un tribunal sentenciador ha incurrido en un abuso de discreción, la norma es que:

> [...] un tribunal de justicia incurre en un abuso de discreción, *inter alia*: cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente. *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009), citando *García v. Padró*, 165 DPR 324, 336 (2005); *Pueblo v. Ortega Santiago*, 125 DPR a las págs. 211–212.

Por otro lado, la Ley Núm. 103 de 29 de junio de 1955, Ley de Sentencia Suspendida en Causas de Delitos Graves y en Ciertos Delitos Menos Graves para Menores de 21 Años ("Ley 103"), según enmendada, autoriza al foro primario conceder, a su discreción, sentencias suspendidas en todo caso de delito grave y menos grave si el convicto fuere menor de veintiún (21) años de edad a la fecha de la comisión del delito, excepto en casos que involucre (1) asesinato en primer grado; (2) cuando se intente utilizar un arma de fuego en la comisión de un delito grave o su tentativa; (3) por infracción a lo dispuesto en el Artículo 411-A de la Ley Núm. 4 de 23 de junio de 1971, Ley de Sustancias Controladas de Puerto Rico, según enmendada, 24 LPRA sec. 2411a; y (4) delitos menos graves que surjan de hechos envueltos en el delito mayor que involucren las infracciones antes referidas. Véase, Sec. 2 de la Ley 103, 34 LPRA sec. 1042.

### III.

Como cuestión de umbral, rechazamos el intento del Apelante de re-litigar el asunto jurisdiccional expresamente resuelto por este Tribunal en la Sentencia Anterior. Dicha sentencia advino final y firme, y la litigación de un asunto en algún punto tiene que llegar a

su fin. Aun si tuviésemos la potestad de entrar en los méritos de dicho planteamiento, concluiríamos que el mismo es inmeritorio, por las razones consignadas en la Sentencia Anterior. Es decir, una vez se determina causa probable contra un menor por el delito de asesinato, la Sala Superior retiene su jurisdicción durante todo el proceso criminal, aun cuando el menor no resulte convicto por dicho delito.

Aclarado lo anterior, concluimos que el TPI no abusó de su discreción, ni cometió error de derecho alguno, al imponerle al Apelante una sentencia de ocho años de reclusión por el delito de amenaza. Como puntualizáramos previamente, el TPI tiene amplia discreción para conceder el beneficio de sentencia suspendida y la determinación que haga al respecto está cobijada por una presunción de corrección. Por consiguiente, solo procede nuestra intervención cuando existe abuso de discreción o arbitrariedad.

En el caso de autos, no encontramos que el TPI abusara de su discreción o actuara arbitrariamente al concluir que el Apelante no era acreedor del privilegio en discusión. Aunque el Apelante no tenía historial delictivo previo y era un menor de 16 años al momento de los hechos, lo cierto es que, del Informe y las declaraciones de la Técnica Sociopenal durante la vista de impugnación, surgen varios elementos que no favorecen la concesión del privilegio, los cuales sustentan adecuadamente la determinación impugnada.

Por ejemplo, ante la Técnica Sociopenal, el Apelante realizó expresiones denigrantes y burlonas en contra de la Testigo. El Apelante negó y racionalizó su participación en los hechos. En el Informe, se hizo constar que hasta responsabilizó al gobierno que "se reguinda (sic) de cualquier cosa". También desfiló prueba a los efectos de que el hogar paterno propuesto no es viable debido a que es un ambiente permisivo y no hay supervisión adecuada. Asimismo, aunque en la comunidad donde residen los abuelos

paternos, los vecinos favorecieron la concesión del privilegio, surge del Informe que en ambas comunidades de las residencias investigadas se relacionó al Apelante con personas de reputación dudosa. Además, la Testigo se opone a la concesión del privilegio y teme por su vida.

En fin, no encontramos que el TPI actuara arbitrariamente, o contrario a derecho. Al contrario, su determinación es razonable a la luz de la totalidad de las circunstancias del presente caso.

IV.

Por los fundamentos que anteceden, se confirma la Sentencia apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones